STATE OF NORTH CAROLINA v. DEMETRI GEORGE DEMOS

No. COA00-1233

(Filed 5 February 2002)

**1. Evidence— written out-of-court statement by victim's father—corroboration**

The trial court did not err in a prosecution for the murders of defendant's estranged wife and her boyfriend by admitting the written out-of-court statement made by the boyfriend's father recapitulating the father's testimony in court and adding that during a phone conversation with defendant husband shortly before the shooting that defendant said several times he could kill his wife, because: (1) a witness's unsworn out-of-court statement is admissible to corroborate the witness's sworn testimony in court, provided the statement is consistent with his trial testimony; (2) prior consistent statements are admissible even though they contain new or additional information so long as the narration of events is substantially similar to the witness's in-court testimony; and (3) the evidence includes many instances of threatening or abusive statements or behavior by defendant that evince actual malice towards his victim wife.

**2. Evidence— written out-of-court statement by victim's father—failure to give a limiting instruction—no plain error**

The trial court did not commit plain error in a prosecution for the murders of defendant's estranged wife and her boyfriend by failing to give the jury a limiting instruction at the time the written out-of-court statement by the boyfriend's father, revealing that during a phone conversation with defendant shortly before the shooting that defendant said several times he could kill his wife, was admitted into evidence because: (1) the evidence was admissible for a proper purpose; and (2) any error in instructing the jury was not so fundamental as to have a probable impact on the verdict.

**3. Jury— viewing of exhibits—no consent by all parties— harmless error**

Although the trial court erred in a prosecution for the murders of defendant's estranged wife and her boyfriend by allowing the jury to review the written statement by the boyfriend's father

in the jury room without defendant husband's consent as required by N.C.G.S. § 15A-1233(b), the error was harmless because: (1) defendant admitted shooting the victims; (2) the testimony of other witnesses provided ample basis to support a finding of defendant's malice towards his victim wife including evidence of prior threats, abusive and vulgar language towards her, and statements expressing a desire to harm or kill her; and (3) there is no reasonable possibility that this error affected the outcome of the proceedings.

**4. Criminal Law— jury instructions—failure to give limiting instruction about exhibit**

The trial court did not err in a prosecution for two murders by failing to give the jury a limiting instruction at the time the written statement by one victim's father was taken into the jury room, because: (1) the trial court properly instructed the jury on this issue earlier as part of its general jury instructions; and (2) defendant has cited no authority in support of his contention that the trial court was required to re-instruct the jury.

**5. Evidence— relationship of defendant with victim—sustained objections—malice**

The trial court did not abuse its discretion in a murder case by sustaining objections to certain defense questions posed to the victim wife's aunt concerning defendant husband's relationship with his wife and whether defendant acted with malice, because: (1) the witness had ample opportunity to testify concerning defendant and his wife's behavior, demeanor, and apparent attitude towards each other; and (2) there was more than sufficient evidence of actual malice before the jury.

**6. Evidence— testimony—defendant's feelings of remorse**

The trial court did not abuse its discretion in a murder case by allegedly denying defendant an opportunity to testify concerning his feelings of remorse for the shooting, because defendant was given sufficient opportunity to present a defense including evidence of remorse.

**7. Sentencing— aggravating factor—two homicides—course of conduct**

The trial court did not err in sentencing defendant for second-degree murder and voluntary manslaughter by aggravating defendant's sentence for each homicide with his conviction

of the other homicide on the basis that each was part of a course of conduct in which he killed the other victim, because the Structured Sentencing Act in effect at the time defendant was sentenced allowed a sentence to be aggravated by evidence necessary to prove elements of contemporaneous convictions provided the evidence is not also necessary to prove the subject conviction.

**8. Sentencing— aggravating factor—knowingly creating a great risk of death to more than one person**

The trial court did not err by aggravating defendant's sentences for second-degree murder and voluntary manslaughter based upon its finding under N.C.G.S. § 15A-1340.16(d)(8) that defendant knowingly created a great risk of death to more than one person by means of a weapon or device which would normally be hazardous to the lives of more than one person, because: (1) the type of bullet fired and the semi-automatic handgun used would normally be hazardous to the lives of more than one person; (2) defendant's actions towards each victim created a risk of death to the other victim, to people in the adjoining trailers, or those who may have been standing nearby in the dark; (3) defendant fired more shots than were necessary to kill the victims; (4) defendant, an expert marksman, shot the victims from close range; and (5) the jury's finding of malice was not dependent upon an inference arising from his use of the weapon.

Appeal by defendant from judgment entered 6 May 1997 by Judge Forrest A. Ferrell in Buncombe County Superior Court. Heard in the Court of Appeals 28 September 2001.

*Attorney General Roy Cooper, by Assistant Attorney General K.D. Sturgis, for the State.*

*Belser & Parke, P.A., by David G. Belser for defendant-appellant.*

BIGGS, Judge.

Demetri Demos (defendant) was tried in Buncombe County for the first degree murder of his estranged wife, Theresa Demos (Theresa), and Robert McCracken (Robert), with whom Theresa had a romantic relationship. Defendant was convicted of second degree murder in the death of Theresa, and voluntary manslaughter in the death of Robert. He received active sentences of 237 to 294 months,

STATE v. DEMOS

[148 N.C. App. 343 (2002)]

and 36 to 53 months, to be served consecutively. From these judgments and sentences, defendant appeals.

The evidence presented at trial tended to show the following: Defendant and Robert grew up together in Buncombe County, and were lifelong friends. In 1986 defendant enlisted in the Marines and served two tours of duty, during which time he became an expert marksman. Defendant and Theresa met in high school, and later married and had two sons. Defendant left the Marines in 1995, and returned to Asheville. In the fall of 1995, defendant and Theresa began to experience marital difficulties; in October 1995, they separated, but continued to share responsibility for their sons, and to see each other socially.

After the separation, defendant was sometimes threatening or abusive towards Theresa. On one occasion, he approached Theresa in a restaurant, and engaged in vulgar, aggressive threats, and on the day of the shooting, Theresa called a friend and discussed her fear of defendant. Also after their separation, defendant bought the .40 caliber semiautomatic handgun later used to shoot Theresa and Robert. Several months after Theresa moved out of defendant's house, she and Robert began a romantic and sexual relationship, which they concealed from defendant. However, the day before the shooting, a friend told defendant that Theresa and Robert were romantically involved; defendant became upset, and called both Robert and Theresa. The night before the shooting, Theresa called her father, Nick Daniels (Daniels), at around midnight, crying and upset because defendant had called and threatened to kill her. Daniels brought Theresa and her sons to his house; later that night defendant called Daniels's house, and called Theresa a "liar, a bitch, and a whore." The shootings occurred late the following night.

Defendant and Theresa spoke on the phone the morning of the shooting, and after defendant promised to stop threatening her, Theresa returned to her trailer. During the day, defendant told Theresa's Aunt Judy that it had occurred to him to kill Theresa, and said to Tami Atkins, Theresa's cousin, that Theresa would "not be around anymore." Defendant began drinking around noon, and by nightfall he was intoxicated. He telephoned Robert's house several times, and talked with Robert's father, David McCracken (McCracken). Later that night, McCracken drove defendant to Theresa's trailer. Defendant told McCracken that he was not bringing a gun, and promised there would be no trouble. In fact, defendant had

concealed two firearms under his clothes. As they neared Theresa's driveway, defendant jumped out of the car and ran towards the trailer. When he got closer, he saw Theresa and Robert embracing in the dark. Defendant testified that upon seeing his wife kissing his best friend, he was overcome by emotion, and immediately began firing his gun. He also testified that he had not planned to shoot anyone, and did not remember how many shots he fired.

Theresa and Robert fell to the ground, killed instantly. Defendant told Theresa's grandmother, who lived next door, to call the police. He waited for the arrival of law enforcement officers, and turned himself in.

## I.

[1] On appeal, defendant first argues that the trial court erred in admitting the written out-of-court statement made by McCracken. We disagree.

At trial, McCracken testified at length to the events surrounding the homicide. Following his testimony, the State introduced, over defendant's objection, McCracken's written out-of-court statement as corroborative evidence. The written statement recapitulated McCracken's testimony in court, and added that during their phone conversations shortly before the shooting, defendant said several times that he "could kill that b----." This specific statement was not part of McCracken's trial testimony. Defendant argues that because these alleged threats were not included in McCracken's trial testimony, the statement containing them was not corroborative, and thus was inadmissible.

A witness's unsworn out-of-court statement is admissible to corroborate the witness's sworn testimony in court, provided the statement is consistent with his trial testimony. *State v. Beane*, 146 N.C. App. 220, 552 S.E.2d 193 (2001). "Corroborative evidence need not mirror the testimony it seeks to corroborate, and may include new or additional information as long as the new information tends to strengthen or add credibility to the testimony it corroborates." *State v. McGraw*, 137 N.C. App. 726, 730, 529 S.E.2d 493, 497, *disc. review denied*, 352 N.C. 360, 544 S.E.2d 554 (2000) (citation omitted). If the out-of-court statement adds weight or credibility to the witness's sworn testimony, it may be admissible, notwithstanding its inclusion of facts not elicited from the witness in court. *State v. Coffey*, 345 N.C. 389, 480 S.E.2d 664 (1997).

Defendant correctly points out that "the State may not introduce as corroborative evidence prior statements of a witness that directly contradict the witness's trial testimony." *State v. Guice*, 141 N.C. App. 177, 201, 541 S.E.2d 474, 490 (2000), *remanded on other grounds*, 353 N.C. 731, 551 S.E.2d 112 (2001). However, "prior consistent statements are admissible even though they contain new or additional information so long as the narration of events is substantially similar to the witness' in-court testimony[,]" *State v. Williamson*, 333 N.C. 128, 136, 423 S.E.2d 766, 770 (1992) (citation omitted), and the trial court has "wide latitude in deciding when a prior consistent statement can be admitted for corroborative, nonhearsay purposes." *State v. Call*, 349 N.C. 382, 410, 508 S.E.2d 496, 513 (1998) (citation omitted).

In the present case, the written statement includes McCracken's assertion that defendant said "I could kill that b----," a phrase not included in McCracken's trial testimony. However, although McCracken's written statement includes the additional phrase, it otherwise corroborates McCracken's in-court testimony. Moreover, McCracken's testimony contained several references to defendant's calling Theresa "a b----." We conclude that the witness's statement was sufficiently corroborative to be admissible.

Further, we conclude that defendant's assertion that the written statement was inadmissible because it supplied the only evidence of actual malice towards Theresa is meritless. The record evidence includes many instances of threatening or abusive statements or behavior by defendant that evince actual malice towards Theresa.

[2] Defendant also contends that the trial court erred by failing to give the jury a limiting instruction at the time the statement was admitted into evidence, notwithstanding the limiting instruction delivered during the trial judge's charge to the jury. The record shows that the defendant did not request an instruction when the statement was introduced. The North Carolina Supreme Court has held previously that failure to request a limiting instruction when evidence is introduced bars later consideration of the issue:

At no time after the trial court made its ruling and the jury was returned to the courtroom did the defendant request that the trial court give the jury a limiting instruction with regard to the evidence in question. The defendant, having failed to specifically request or tender a limiting instruction at the time the evidence

was admitted, is not entitled to have the trial court's failure to give limiting instructions reviewed on appeal.

*State v. Stager*, 329 N.C. 278, 310, 406 S.E.2d 876, 894 (1991) (citations omitted). Accordingly, we review only for plain error. Under the plain error rule, the defendant " 'must convince this Court not only that there was error, but that absent the error, the jury probably would have reached a different result.' " *State v. Roseboro*, 351 N.C. 536, 553, 528 S.E.2d 1, 12 (quoting *State v. Jordan*, 333 N.C. 431, 440, 426 S.E.2d 692, 697 (1993)), *cert. denied*, 531 U.S. 1019, 148 L. Ed. 2d 498 (2000). This Court has often noted that the plain error rule applies only where "the claimed error is a *'fundamental* error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done[.]' " *State v. Odum*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983) (quoting *United States v. McCaskill*, 676 F. 2d 995, 1002 (4th Cir. 1982)). Defendant has failed to demonstrate plain error. "Since defendant did not request such a limiting instruction and since this evidence was admissible for a proper purpose, any error in instructing the jury was not so fundamental as to have a probable impact on the verdict." *State v. Sneeden*, 108 N.C. App. 506, 511, 424 S.E.2d 449, 452 (1993) (citations omitted).

We conclude that McCracken's written statement was admissible, and that the trial court did not commit plain error by failing to give a limiting instruction at the time it was introduced into evidence. Accordingly, this assignment of error is overruled.

II.

[3] Defendant argues next that the trial court erred in allowing the jury to review McCracken's written statement in the jury room without defendant's consent, and also erred by denying his request to issue a limiting instruction to the jury at the time that the statement was taken to the jury room.

Under N.C.G.S. § 15A-1233(b) (1999), the trial court may allow exhibits into the jury room "[u]pon request, . . . and with consent of all parties[.]" In the present case, defendant objected to the jury's having the statement available in the jury room during their deliberations. We conclude, therefore, that allowing the statement in the jury room was error. *State v. Flowe*, 107 N.C. App. 468, 420 S.E.2d 475, *disc. review denied*, 332 N.C. 669, 424 S.E.2d 412 (1992) (error, harmless in light of abundant evidence of guilt, for trial court to allow jury to view exhibit over defendant's objection).

However, an error not arising under the U.S. or State Constitution is not reversible absent evidence that "there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached[.]" N.C.G.S. § 15A-1443(a). *Gardner v. Harriss*, 122 N.C. App. 697, 700, 471 S.E.2d 447, 450 (1996) (although trial court erred by permitting the jury to view exhibits without consent of the parties, defendant "is not entitled to a new trial absent a showing that the error was prejudicial"). In the instant case, defendant admitted shooting the victims. The testimony of other witnesses provided ample basis to support a finding of defendant's malice towards Theresa, including evidence of prior threats, abusive and vulgar language towards her, and statements expressing a desire to harm or kill her. We conclude that there is no reasonable possibility that this error affected the outcome of the proceedings.

**[4]** Further, defendant argues that the court erred by not giving the jury a limiting instruction at the time the statement was taken to the jury room. The court had properly instructed the jury on this issue earlier, as part of its general jury instructions. Defendant has cited no authority in support of his contention that the trial court was required to re-instruct the jury.

We conclude that the trial court committed harmless error by allowing the jury to review the statement in the jury room over defendant's objection. We also conclude that the trial court did not err by failing to deliver a second limiting instruction when the jury took the statement to the jury room. Consequently, this assignment of error is overruled.

### III.

**[5]** In his next assignment of error, defendant argues that the trial court erred by sustaining objections to certain defense questions posed to Theresa's aunt, Judy Davis (Davis). Defendant contends that Davis would have testified about defendant's demeanor on the day of the shooting, and would also have testified that Theresa was not frightened of defendant. He argues that this evidence was necessary in order for defendant to rebut other testimony that defendant had threatened to kill Theresa.

North Carolina Rules of Evidence, Rule 611, provides in part as follows:

Rule 611. Mode and order of interrogation and presentation. (a) *Control by court.* The court shall exercise reasonable control

over the mode and order of interrogating witnesses and present-
ing evidence so as to (1) make the interrogation and presentation
effective for the ascertainment of the truth, (2) avoid needless
consumption of time, and (3) protect witnesses from harassment
or undue embarrassment.

N.C.G.S. § 8C-1, Rule 611(a) (1999). The determination of how best to
accomplish the aims of Rule 611(a) rests in the trial court's discre-
tion. *State v. Allen*, 90 N.C. App. 15, 367 S.E.2d 684 (1988). "Because
the manner of the presentation of evidence is a matter resting pri-
marily within the discretion of the trial judge, his control of the case
will not be disturbed absent a manifest abuse of discretion." *State v.
Harris*, 315 N.C. 556, 562, 340 S.E.2d 383, 387 (1986).

In the present case, Davis testified about defendant and Theresa,
and offered her observations of their relationship. She testified, *inter
alia*, that Theresa seemed happy with defendant, that defendant
cared for his son, and that they spent some nights together, even after
separating; and that defendant was "depressed" and "devastated"
about Theresa's relationship with Robert. Davis also testified that, on
the evening of the homicide, she spoke with defendant, who denied
calling Theresa and threatening her, but indicated to Davis that he
had thought about killing Theresa. Davis's testimony was lengthy,
occupying over fifty transcript pages. The trial court sustained objec-
tions to only a few questions asked of this witness, on the grounds
that they were leading, or called for speculation. We note that defend-
ant neither made an offer of proof, nor attempted to rephrase his
questions. We conclude that Davis had ample opportunity to testify
concerning defendant and Theresa's behavior, demeanor, and appar-
ent attitude towards each other. We further conclude that the trial
court did not abuse its discretion in sustaining objections to several
defense questions.

Defendant further argues that the trial court's evidentiary rulings
acted to exclude testimony that was pivotal to the jury's determina-
tion of malice. We disagree. The State presented evidence of defend-
ant's anger towards Theresa and Robert, of his behavior in the days
surrounding the shooting, and of prior threats against Theresa. In
conjunction with defendant's own testimony, this evidence provided
ample additional basis for the jury to conclude that defendant acted
with malice.

Defendant contends that the fact that the jury had some questions
during deliberations supports his argument the jury was deprived of

"critical" evidence that they needed to resolve the issue of malice. We find that the length of time that the jury deliberated, and the questions they submitted to the court, reflect the complex task they faced. However, there is no evidence that the jury was unable to accomplish their task. Moreover, the fact that the jury returned different verdicts in the two cases indicates that they were able to evaluate the separate evidence of malice in regards to each victim. We conclude that there was more than sufficient evidence of actual malice before the jury.

For the reasons discussed above, this assignment of error is overruled.

## IV.

**[6]** Defendant next argues that the court erred by denying him an opportunity to testify concerning his feelings of remorse for the shooting. This argument is without merit. Defendant testified for almost two hundred transcript pages concerning, *inter alia,* his life story, his relationships with Theresa and with Robert, his affection for both of them, the events surrounding the homicides, and the details of the shootings. He also testified to remorse, including the following dialogue

ATTORNEY: And have you been sorry that you've done that for the last eleven months?

DEFENDANT: It's the worst thing that's happened in my life, yes sir. I'll never have my wife. I'll never have my best friend. Casey won't have her dad. My boys won't have their mom. Nick and Brenda won't have their daughter. And David and Kay won't have their son. I am very sorry.

Defendant's assignment of error relates to several leading questions to which the trial court sustained objections. Defense counsel did not attempt to rephrase the questions. Moreover, the defendant was able to present essentially the same evidence to the jury at other points in his testimony.

We find no abuse of discretion in the trial court's rulings on the challenged defense questions, and conclude that defendant was given sufficient opportunity to present a defense, including evidence of remorse. Accordingly, we overrule this assignment of error.

## V.

**[7]** Defendant argues next that the trial court erred by aggravating his sentence for each homicide with his conviction of the other homicide, on the basis that each was part of a "course of conduct" in which he killed the other victim. Defendant contends that a defendant's sentence may never be aggravated by his contemporaneous conviction of a joined offense. However, the cases cited by defendant in support of his argument all predate our current sentencing law. Under the Structured Sentencing Act, in effect at the time defendant was sentenced, a sentence may be aggravated by evidence necessary to prove elements of contemporaneous convictions, provided the evidence is not also necessary to prove the subject conviction. *State v. Ruff*, 349 N.C. 213, 217, 505 S.E.2d 579, 581 (1998) ("[s]o long as [the aggravating factor] is not an essential element of the underlying felony for which defendant is sentenced" defendant's sentence may be aggravated by evidence necessary to prove contemporaneous conviction). Accordingly, this assignment of error is overruled.

## VI.

**[8]** Defendant's final argument is that the trial court erred by aggravating his sentence based upon its finding that "defendant knowingly created a great risk of death to more than one person by means of a weapon or device which would normally be hazardous to the lives of more than one person." N.C.G.S. § 15A-1340.16(d)(8) (1999). We disagree.

Aggravating factors must be found by a preponderance of the evidence. *State v. Baldwin*, 139 N.C. App. 65, 532 S.E.2d 808, *disc. review denied*, 352 N.C. 677 545 S.E.2d 430 (2000). To determine whether the aggravating factor at issue has been proven, the trial court considers evidence regarding both (1) the nature of the weapon used, and (2) the risk of death to more than one person. *State v. Moose*, 310 N.C. 482, 313 S.E.2d 507 (1984) (trial court should consider extent of risk of death created, and also the nature of the weapon used). "The legislature intended this aggravating factor to be limited to those weapons or devices which are indiscriminate in their hazardous power." *State v. Bethea*, 71 N.C. App. 125, 129, 321 S.E.2d 520, 523 (1984).

Defendant argues that the evidence did not support the trial court's finding of this aggravating factor. We disagree. The evidence was uncontradicted that Theresa and Robert were killed by Speer

Gold Dot 155-grain jacketed hollow-point rounds, fired from a Ruger .40 caliber Smith & Wesson semi-automatic handgun. The type of bullet, fired from this type of weapon, comprises a weapon that "would normally be hazardous to the lives of more than one person." *State v. Bruton*, 344 N.C. 381, 393, 474 S.E.2d 336, 345 (1996) ("semi-automatic pistol is normally used to fire several bullets in rapid succession and in its normal use is hazardous to the lives of more than one person"); *State v. Evans*, 120 N.C. App. 752, 463 S.E.2d 830 (1995), *cert. denied*, 343 N.C. 310, 471 S.E.2d 78 (1996) (semi-automatic handgun normally hazardous to the lives of more than one person); *State v. Antoine*, 117 N.C. App. 549, 451 S.E.2d 368, *disc. review denied* 340 N.C. 115, 456 S.E.2d 320 (1995) (holding that semi-automatic handgun is type of weapon contemplated by statute defining aggravating factors). We conclude that the weapon employed by defendant was of a type that in its normal use is hazardous to the lives of more than one person.

In its determination of whether this aggravating factor is applicable, the trial court also considers whether the manner in which defendant used the gun created a great risk of death to more than one person. The evidence was that the defendant fired eleven shots in quick succession, any one or two of which would have been fatal to either victim. The shooting took place in the dark, in a residential neighborhood; near neighbors testified about hearing sounds, and coming outside to investigate. Defendant testified that he did not aim, but fired repeatedly in response to overwhelming feelings he experienced upon seeing Theresa and Robert embracing. Under these facts, defendant's actions towards each victim created a risk of death to the other victim, and to people in the adjoining trailers, or who may have been standing nearby in the dark. We conclude that the evidence supported the trial court's finding of this aggravating factor.

Defendant also contends that since each of his convictions required proof that he fired the same weapon, use of that weapon cannot aggravate his sentences. Defendant cites N.C.G.S. § 15A-1340.16(d) (1999) in support of his position. The statute states:

> Evidence necessary to prove an element of the offense shall not be used to prove any factor in aggravation, and the same item of evidence shall not be used to prove more than one factor in aggravation. Evidence necessary to establish that an enhanced sentence is required under G.S. 14-2.2 may not be used to prove any factor in aggravation.

Defendant argues that because his shooting the victims with the .40 caliber Ruger was an element of the State's case, his use of the weapon cannot aggravate his sentence, citing N.C.G.S. § 15A-1340.16(d). We do not agree.

The evidence shows that defendant fired more shots than were necessary to kill the victims. The evidence was that defendant, an expert marksman, shot the victims from close range. Rather than aiming, he fired eleven times in their general direction, firing more shots than were necessary to kill Theresa and Robert. These additional shots, each carrying a bullet that could penetrate a trailer wall and "explode" inside a victim, created a great risk of injury or death to others.

Nor do we agree with defendant that evidence that he fired additional shots, beyond those needed to cause death, was required for the State to prove malice on his part. Trial witnesses provided testimony regarding defendant's previous threats of violence against Theresa, from which the jury could find that the defendant had actual ill will and spite towards her. Therefore, the jury's finding of malice was not dependent upon an inference arising from his use of the weapon.

We conclude that the defendant used a weapon with the characteristics, and in the manner, so as to create a great risk of death to more than one person. We further conclude that evidence of the type of weapon employed and the way in which it was used was not required to prove an element of the charged offense, and that the trial court properly found this factor in aggravation. Accordingly, this assignment of error is overruled.

For the reasons discussed above, we conclude that the defendant had a fair trial, free from prejudicial error.

No error.

Judges McGEE and TIMMONS-GOODSON concur.