STATE OF NORTH CAROLINA v. EUGENE PAVIN STRICKLAND

No. COA01-1449

(Filed 5 November 2002)

1. **Constitutional Law— right to speedy trial—long period of pretrial incarceration**

The trial court did not violate a defendant's right to a speedy trial under U.S. Const. amend. VI and N.C. Const. art. I, § 18 in a second-degree rape and misdemeanor breaking and entering case even though defendant was incarcerated awaiting trial for 940 days, because: (1) the prosecutor offered evidence to show that the long period of defendant's pretrial incarceration was the result of a prosecutorial backlog of other serious felony cases, and defendant did not present any evidence of neglect or willfulness by the prosecutor or that the delay was purposeful or oppressive to him; (2) defendant did not allege any prejudice created by the two and one-half year delay before his trial other than prolonged anxiety and concern; and (3) defendant did not

even allege that any witnesses had disappeared, died, or were otherwise unavailable, and defendant did not assert the loss, deterioration or disintegration of physical evidence.

**2. Constitutional Law— right to present defense—sufficient opportunity to question witness on cross-examination**

The trial court did not violate a defendant's right to present a defense in a second-degree rape and misdemeanor breaking and entering case even though the trial court sustained seven of the prosecutor's objections during defense counsel's cross-examination of the victim ex-wife, because: (1) defendant had sufficient opportunity to question the victim extensively despite the State's successful objections in response to a line of questioning regarding defendant's interaction with the victim after their separation; and (2) defendant testified on his own behalf and presented three other witnesses.

**3. Evidence-prior crimes or bad acts— history of abuse of victim**

The trial court did not err in a second-degree rape and misdemeanor breaking and entering case by admitting evidence of past crimes under N.C.G.S. § 8C-1, Rule 404(b) including defendant's history of abuse of his victim ex-wife during their marriage, because: (1) defendant's physical abuse towards the victim is not too remote in time to be relevant; (2) the incidents are sufficiently similar, whether sexual in nature or not, since defendant had a history of attacking the victim and asserting his physical power over her; (3) the evidence was relevant to prove defendant's pattern of physical intimidation of the victim; and (4) the evidence has bearing on defendant's state of mind at the time of the attack in June 1998.

**4. Criminal Law— improper testimony—objection sustained—no duty to strike testimony or issue curative instruction**

The trial court did not err in a second-degree rape and misdemeanor breaking and entering case by failing to strike improper testimony from the record upon defense counsel's request and by failing to issue a curative jury instruction after the trial court sustained defendant's objection to the testimony, because: (1) the trial court's act of sustaining defendant's objection to improper testimony meant the trial court had no duty to strike the testimony or issue a curative instruction; and (2) the

general instructions given at the beginning of the trial were suffi-
cient to prevent any prejudicial effect produced by the failure to
strike the improper testimony.

**5. Evidence— prior crimes or bad acts—impeachment—open-
ing door to details**

The trial court did not abuse its discretion in a second-degree
rape and misdemeanor breaking and entering case by denying
defendant's motion for a mistrial even though the State cross-
examined defendant about the details of his prior convictions
that were being used for impeachment purposes, because
defendant opened the door to the details of his previous convic-
tions by: (1) his detailed explanations of the actions which gave
rise to these charges; and (2) on cross-examination, requesting
from the prosecutor more specific information about his prior
misconduct on several occasions.

**6. Rape— second-degree—actual or constructive force—
motion to dismiss—sufficiency of evidence**

The trial court did not err by failing to dismiss the charge of
second-degree rape even though defendant contends that there
was no evidence of the actual or constructive force necessary,
because: (1) the victim testified that she was afraid of defendant
and struggled with him physically to prevent intercourse; and (2)
this testimony taken in the light most favorable to the State was
proof of both actual and constructive force sufficient to support
defendant's conviction.

**7. Witnesses— assistant clerk of court—custodial officer—
minimal contact with jurors**

The trial court did not err in a second-degree rape and mis-
demeanor breaking and entering case by allowing the assistant
clerk of court to testify even though defendant contends she was
a custodial officer in charge of the jury, because: (1) there is no
evidence that the assistant clerk's contacts with the jury were
prejudicial to defendant in any way when her interaction with the
jury was entirely within the courtroom as part of her job, and at
no point did she take control over the jury or transport them out-
side the courtroom; and (2) the assistant clerk was never alone
with any one juror or group of jurors, and the assistant clerk's
interaction with the jury was minimal.

STATE v. STRICKLAND

[153 N.C. App. 581 (2002)]

Appeal by defendant from judgment entered 30 January 2001 by Judge B. Craig Ellis in Robeson County Superior Court. Heard in the Court of Appeals 17 September 2002.

*Attorney General Roy Cooper, by Assistant Attorney General Donald W. Laton, for the State.*

*William L. Davis, III, for defendant-appellant.*

EAGLES, Chief Judge.

Eugene Pavin Strickland ("defendant") appeals from the trial court's judgment entered on a jury verdict finding him guilty of second-degree rape and misdemeanor breaking and entering. Defendant asserts seven assignments of error: (1) that defendant's right to a speedy trial was denied; (2) defendant was denied his right to present a defense; (3) the trial court admitted improper evidence of past crimes; (4) the trial court failed to issue a curative jury instruction; (5) defendant's motion for mistrial should have been granted; (6) the evidence against defendant was insufficient to support a conviction; and (7) that the trial court allowed improper testimony from an officer of the court. After reviewing the record and briefs, we find no error.

The evidence tends to show the following. Serena Blanks ("victim") was married to defendant for six years until their divorce in May 1997. Defendant and victim had two daughters. Defendant was violent towards victim throughout the marriage and physically abused victim at least ten times. On at least one occasion, victim assaulted defendant in return. Victim left the marital home in February 1996. Defendant testified that he and victim continued to have a sexual relationship after the separation and saw each other on a regular basis. The victim denied any sexual intercourse with defendant after their separation. She testified that she had taken her children to visit with defendant and that she had cut defendant's hair for him once while they were separated.

On 27 June 1998, victim fell asleep at approximately 10:00 p.m. in her living room. She woke up at approximately midnight and checked to make sure both of her doors were locked. She then went to her bedroom and laid down on the bed. Defendant appeared in victim's bedroom and grabbed her arms. Defendant told victim that he was miserable without her and wanted to resume their relationship. Defendant went to the restroom and walked outside for a cigarette

during the course of his conversation with victim. Victim did not use the telephone or lock the door while defendant was outside her home because she wanted to keep him calm. When defendant came back inside the trailer, he began rubbing victim's breasts and pulling at her shirt and shorts. Victim pushed defendant's hands away and struggled with him. Defendant pulled victim to the floor and forced her to have intercourse. After the attack, defendant asked victim to follow him outside, where he showed her a loose window pane in her trailer. Defendant informed victim that he entered the trailer through the broken window.

Defendant was arrested on 27 June 1998. A true bill of indictment was returned against defendant on 14 December 1998. Defendant filed three motions for reduction of his bond, on 6 August 1999, 4 May 2000 and 7 December 2000. On 4 May 2000 and 7 December 2000, defendant also moved to dismiss the charges against him because he had been denied a speedy trial. All of defendant's motions were denied. Defendant's trial began on 23 January 2001, approximately 940 days after he had been arrested.

At trial, defendant testified that he had a continuing sexual relationship with victim after their separation and divorce. Defendant testified that victim had picked him up and had driven him to victim's trailer, where they argued on 26 June 1998. Defendant further testified that victim drove him back to his mother's house that evening and that he did not return to victim's trailer later that night. At the close of evidence, the jury found defendant guilty of misdemeanor breaking and entering and guilty of second-degree rape. Defendant appeals.

I

[1] On appeal, defendant first argues that he was denied the right to a speedy trial. Defendant was incarcerated awaiting trial for 940 days. Although his pretrial incarceration was exceptionally lengthy, we hold that his right to a speedy trial was not violated.

The right to have a speedy trial is protected by both the United States and North Carolina Constitutions. U.S. Const. amend. VI, N.C. Const. art. I, § 18. The right to a speedy trial attaches when a defendant is formally charged with a crime, which is usually upon arrest. *See Dillingham v. United States*, 423 U.S. 64, 46 L. Ed. 2d 205 (1975), *cert. denied*, 434 U.S. 1018, 54 L. Ed. 2d 764 (1978); *State v. McKoy*, 303 N.C. 1, 277 S.E.2d 515 (1981). When determining whether an

accused's right to a speedy trial has been violated, the court should consider four factors: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his rights; and (4) prejudice to the defendant. *Doggett v. United States*, 505 U.S. 647, 120 L. Ed. 2d 520 (1992); *Barker v. Wingo*, 407 U.S. 514, 33 L. Ed. 2d 101 (1972). Of the four factors to be considered, no single factor is determinative of the issue of whether a trial was sufficiently speedy. *State v. Webster*, 337 N.C. 674, 678, 447 S.E.2d 349, 351 (1994); *State v. Johnson*, 124 N.C. App. 462, 466, 478 S.E.2d 16, 19 (1996).

Once a defendant shows that his trial has been delayed for an exceptional amount of time, the delay triggers the court's consideration of the remaining *Barker* factors. *See Webster*, 337 N.C. at 679, 447 S.E.2d at 351; *Johnson*, 124 N.C. App. at 466, 478 S.E.2d at 19. In North Carolina, a delay of sixteen months was deemed lengthy enough to trigger the trial court's examination of the other three *Barker* factors. *See Webster*, 337 N.C. at 679, 447 S.E.2d at 351. If a defendant proves that a delay was particularly lengthy, the defendant creates a prima facie showing that the delay was caused by the negligence of the prosecutor. *State v. Chaplin*, 122 N.C. App. 659, 664, 471 S.E.2d 653, 655-56 (1996) (1055 day delay); *State v. Pippin*, 72 N.C. App. 387, 392, 324 S.E.2d 900, 904, *disc. rev. denied*, 313 N.C. 609, 330 S.E.2d 615 (1985) (14 month delay). The prosecutor may rebut the prima facie case by showing a valid reason for the delay. *State v. Avery*, 95 N.C. App. 572, 577, 383 S.E.2d 224, 226 (1989), *disc. rev. denied*, 326 N.C. 51, 389 S.E.2d 96 (1990). Once the prosecutor offers a reason for the lengthy delay of defendant's trial, the burden of proof shifts back to the defendant to show neglect or willfulness by the prosecutor. *Avery*, 95 N.C. App. at 577, 383 S.E.2d at 226. If the delay is not proven to be purposeful or oppressive, this factor weighs in favor of the State. *See State v. Hammonds*, 141 N.C. App. 152, 541 S.E.2d 166 (2000), *aff'd*, 354 N.C. 353, 554 S.E.2d 645 (2001), *cert. denied*, 536 U.S. 907, 153 L. Ed. 2d 184 (2002).

Here, defendant was imprisoned for 940 days between his arrest and his trial. This exceptional length of pretrial incarceration supports defendant's claim that his right to a speedy trial was denied and triggers consideration of the remaining *Barker* factors.

The second factor in *Barker* concerns the reason for the delay. Here, defendant's trial was delayed for such a great amount of time that it creates the prima facie showing that the delay was created by prosecutorial negligence. *See Chaplin*, 122 N.C. App. at 664, 471

S.E.2d at 655-56; *Pippin*, 72 N.C. App. 392, 324 S.E.2d at 904. However, the prosecutor offered evidence to rebut this presumption by showing that the long period of defendant's pretrial incarceration was the result of a prosecutorial backlog of other serious felony cases. *See State v. Spivey*, 150 N.C. App. 189, 563 S.E.2d 12 (2002). Although case backlogs should not be encouraged, the defendant did not present any evidence of neglect or willfulness by the prosecutor. The defendant did not prove that the delay of his trial was purposeful or oppressive to him. As a result, the second *Barker* factor weighs in favor of the State.

The third *Barker* factor examines whether defendant has asserted his right to a speedy trial. A criminal defendant who vigorously asserts his right to a speedy trial will be considered in a more favorable light than a defendant who does not. *See Barker*, 407 U.S. at 528-29, 33 L. Ed. 2d at 115-16. Here, defendant's attorney filed two motions to dismiss based on the lack of a speedy trial. The first of these motions was filed on 4 May 2000, when defendant had been incarcerated for nearly two years. The second motion, filed 7 December 2000, led to the defendant's trial in January 2001. Because defendant asserted his right to a speedy trial, the third *Barker* factor weighs in favor of the defendant.

The fourth factor in the *Barker* test hinges on the defendant's ability to show prejudice to his defense caused by the delay in trial. In *Doggett v. United States*, 505 U.S. 647, 655, 120 L. Ed. 2d 520, 531 (1992), the Supreme Court stated that a delay of eight and one-half years before trial "presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify." A specific showing of prejudice to the defendant is difficult, because "time's erosion of exculpatory evidence and testimony can rarely be shown." *Doggett*, 505 U.S. at 655, 120 L. Ed. 2d at 530-31. Here, defendant did not **allege** any prejudice created by the two and one-half year delay before his trial, other than "prolonged anxiety and concern." Although proving the loss of evidence or testimony is a nearly impossible feat, defendant did not even **allege** that any witnesses had disappeared, died or were otherwise unavailable. *See Chaplin*, 122 N.C. App. 659, 665, 471 S.E.2d 653, 657 (1996) (where defendant could show prejudice from delay because a key exculpatory defense witness had been released from prison and was beyond the court's subpoena power). Likewise, defendant did not assert the loss, deterioration or disintegration of any physical evidence. We cannot assume prejudice in the absence of an allegation of prejudice, especially

when the pretrial delay is not as egregious as the delay in *Doggett*. Therefore, the fourth *Barker* factor weighs against defendant.

After consideration of all the factors outlined in *Barker*, we conclude that defendant's excessive post-accusation incarceration before trial is outweighed by the defendant's inability to prove neglect or willfulness by the prosecutor combined with the lack of allegation or proof of prejudice. Accordingly, this assignment of error is overruled.

## II

**[2]** Defendant's second assignment of error alleges that the trial court denied his right to present a defense. We disagree.

According to the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution, every criminal defendant has a right to defend himself against criminal charges. However, the presentation of evidence and witness testimony is subject to the reasonable judgment of the trial court. *See State v. Demos*, 148 N.C. App. 343, 351, 559 S.E.2d 17, 23, *cert. denied*, 355 N.C. 495, 564 S.E.2d 47 (2002). If a defendant is permitted sufficient opportunity to question witnesses on direct or cross-examination, no prejudicial error occurs. *Id.* at 351, 559 S.E.2d at 23.

Here, the trial court sustained seven of the prosecutor's objections during defense counsel's cross-examination of victim. The successful objections were in response to a line of questioning regarding defendant's interaction with victim after their separation. Despite these unanswered questions, defense counsel had opportunity to cross-examine victim extensively. In fact, the transcript of victim's cross-examination occupies sixty-nine pages of the total trial transcript. Defendant also testified in his own defense and presented three other witnesses. Because defendant was not barred from presenting a defense, this assignment of error is overruled.

## III

**[3]** Defendant also assigns error to the trial court's admission of evidence of defendant's history of abuse of the victim. Defendant contends that this evidence should have been barred by G.S. § 8C-1, Rule 404(b). We disagree.

Rule of Evidence 404(b) states, in pertinent part:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in

conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident.

G.S. § 8C-1, Rule 404(b) (2001). Evidence should be excluded if its only probative value is to show the defendant's propensity to commit the crime for which he is currently charged. *See State v. West*, 103 N.C. App. 1, 404 S.E.2d 191 (1991). If a prior crime or act shows defendant's propensity to commit a crime, it is still admissible under Rule 404(b) if it is relevant for another purpose. The admission of Rule 404(b) evidence is guided by similarity and temporal proximity. The less similar or further apart in time two incidents are, the less probative value is attached to them. *State v. Jones*, 322 N.C. 585, 590, 369 S.E.2d 822, 824 (1988).

Here, defendant objected to the admission of victim's testimony about previous acts of abuse towards her by defendant during their marriage. Victim was allowed to testify that defendant had beaten her and threatened her family during the marriage:

Q: What happened; what did he do to you?

A: Pulled a trash bag over my head; put a double-barrel shotgun to my mouth; drug me down dirt roads; beat me with vacuum cleaner pipes, brooms.

. . . .

Q: And how did the Defendant place the plastic bag over your head?

A: He took a—like a rope, tied my hands and legs together behind me and took a trash bag and put it over me. Took duct tape, wrapped the bottom of the trash bag. And I was—stayed in it, seemed about approximately five or ten minutes.

Defendant argued that these actions were not relevant to the case at bar because they occurred almost twelve years before his trial. In addition, defendant argued that the evidence of previous abuse was not a sufficiently similar act. Defendant asserts that because the previous assaults were not sexual in nature they have no bearing on the current accusations. We disagree. The evidence of defendant's physical abuse towards victim is not too remote in time to be relevant.

Victim stated that she suffered physical abuse throughout her marriage to defendant, which ended approximately one year before the attack on victim that gave rise to defendant's current charges. One year is sufficiently close in time as to be relevant. The incidents are also sufficiently similar to be admissible. Whether sexual in nature or not, defendant had a history of attacking victim and asserting his physical power over her. The evidence of defendant's prior abuse of victim was relevant to prove his pattern of physical intimidation of victim. Also, the evidence has bearing on victim's state of mind at the time of the attack in June 1998. Therefore, we overrule this assignment of error.

IV

[4] Defendant also argues that the trial court committed reversible error by its failure to strike improper testimony and give the jury instructions to disregard testimony after the court sustained defendant's objection to testimony by a witness for the State. We are not persuaded.

At trial, the State called Ms. Shelby Foy from the Domestic Violence Center as a witness. Ms. Foy testified that "when [victim] came to the office, we noticed that she had extensive bruises about her neck . . . legs and arms. And when we see that, we immediately take photographs of that as best we could, and for proof of the injuries." Her testimony on this point was objected to by defense counsel, and the objection was sustained by the trial court. However, the trial court failed to strike the testimony from the record upon defense counsel's request. Also, the trial court did not issue a curative instruction to the jury. Defendant claims these rulings allowed improper evidence before the jury and prejudiced defendant's case. We disagree.

The trial court was under no obligation to issue curative instructions or strike the forbidden testimony from the record. The trial court instructed the jury at the beginning of trial:

> It is the right of the attorneys to object when testimony or other evidence is offered which they believe not to be admissible. When the Court sustains an objection to a question, the jurors must disregard the question and the answer, if one has been given, and draw no inference from the question or speculate as to what the witness would have said if permitted to answer the question. Evidence stricken from the record must, likewise, be disregarded by the jury.

These general instructions, given at the beginning of the trial, are sufficient to prevent any prejudicial effect produced by the failure to strike the improper testimony. *State v. Vines*, 105 N.C. App. 147, 153, 412 S.E.2d 156, 160-61 (1992). Since the trial court sustained defendant's objection, it had no duty to strike the testimony or issue a curative instruction. This assignment of error is overruled.

## V

**[5]** Next, defendant assigns error to the trial court's failure to grant his motion for mistrial. Defendant claims that the improper introduction of evidence by the prosecutor entitles defendant to a mistrial. We disagree.

A judge must declare a mistrial if there is an error or legal defect in the proceedings or conduct in or out of the courtroom that results in substantial and irreparable prejudice to defendant's case. G.S. § 15A-1061 (2001). A declaration of mistrial is within the trial court's discretion and a failure to declare a mistrial will not be disturbed unless an abuse of discretion is shown. *State v. Calloway*, 305 N.C. 747, 754, 291 S.E.2d 622, 627 (1982). If no prejudicial effect is shown, the denial of a mistrial motion is appropriate. *See State v. Mills*, 39 N.C. App. 47, 249 S.E.2d 446 (1978), *disc. rev. denied*, 296 N.C. 588, 254 S.E.2d 33 (1979).

Here, defendant contends that the trial court allowed the State to cross-examine defendant improperly about the details of his prior convictions for trespass, communicating threats, assault on a female and stalking. Defendant claims that the prosecutor should have been limited to asking about the time, place and punishment of those crimes. Normally, when a conviction is used for impeachment purposes on cross-examination, the prosecutor cannot go into the details of the previous crimes without creating reversible error. *State v. Gallagher*, 101 N.C. App. 208, 398 S.E.2d 491 (1990); *State v. Rathbone*, 78 N.C. App. 58, 336 S.E.2d 702 (1985), *disc. rev. denied*, 316 N.C. 200, 341 S.E.2d 582 (1986). However, in this case, defendant himself opened the door to the details of his previous convictions:

> Q: Is that, sir, admitting that you were convicted of second degree trespass when you went to the Robeson County Counseling Center and they asked you to leave and you would not leave and Patrolman J. Katzenberger charged you with that offense?
>
> MR. DAVIS: Objection.

THE WITNESS: I—I reckon that you—

THE COURT: Overruled.

THE WITNESS: I reckon that you can call it second degree trespassing after the judge sent me there. And once I—if it was up to me, I would have never went there. So, when the judge tells me to go, I'm going there.

. . . .

THE WITNESS: When Theodora, Serena, Dora Sampson come barging into my home, and I'm sitting there, and these people attacked me in my house, then the policemen—I called the police. The police arrived at my residence—you can ask the officer. . . . [T]hese people follow me down here to the courthouse: the mother, the daughter, the other daughter. They get up here and swear these complaints out. He said this, he did this, he said he was going to kill me. . . . Ms. Theodora Hunt tells them I placed a communicating threat on her. Dora Hines says I was trespassing on her land. Serena Strickland says I was threatening to kill her and, plus, Serena Strickland says I assaulted her.

. . . .

Q: Now as to that particular charge that was filed in 93-Cr-11069.

A: Yes, ma'am.

Q: Were you convicted in 94-Cr-15377 of second degree trespass?

A: Who is the complainant?

Q: Dora Sampson, offense date August 6, 1994, at 128 Riley Circle in Lumberton, North Carolina.

A: When you have three people—.

Q: Sir, if you could answer my question.

. . . .

Q: Were you convicted in 94-Cr-15378 of communicating threats to Theodora Hunt on August 6, 1994 for orally telling her you were going to kill her?

A: I don't see how I was going to kill Ms. Sampson and all three of them was on me.

. . . .

Q: Were you convicted of assault on a female in 95-Cr-13982 on August 4th, 1995?

A: This is on Serena Strickland, right?

Q: Where it was alleged that you assaulted Serena Strickland by hitting her in the mouth with your fist?

. . . .

Q: Were you convicted in 94-Cr-15134 for harassing phone calls to Teresa Baily?

A: I was calling to get my things that Serena let her walk out of the house with.

. . . .

Q: Were you convicted in 95-Cr-11125, date of offense May 28th, 1995, for assault on a female of Serena Strickland by beating her about the arms with a belt, causing numerous bruises where you entered a plea of guilty?

Although we do not approve of the prosecutor's going beyond the normal level of detail on prior crimes used for impeachment, the prosecutor's questions here did not create reversible error. Instead, defendant's detailed explanations of the actions which gave rise to these charges opened the door and allowed the prosecutor to divulge more details about the crimes in question. During his cross-examination, the defendant requested more specific information about his prior misconduct on several occasions from the prosecutor. The prosecutor in response went into some identifying detail about the prior misconduct, but she did not, in effect, explain the entire prior crime to the jury. The prosecutor may have inquired about a few too many details of defendant's prior criminal record, but defendant has not alleged or shown any prejudicial error from the prosecutor's mistakes. As a result, this assignment of error is overruled.

VI

[6] Defendant's sixth assignment of error is that the evidence was not sufficient to support the jury's finding of guilt for second-degree rape. Defendant argues that there was no evidence of the actual or constructive force necessary for a second-degree rape conviction and that the trial court should have dismissed the charge. We disagree.

The crime of second-degree rape is defined as follows:

A person is guilty of rape in the second degree if the person engages in vaginal intercourse with another person: (1) By force and against the will of the other person; or (2) Who is mentally defective, mentally incapacitated, or physically helpless, and the person performing the act knows or should reasonably know the other person is mentally defective, mentally incapacitated, or physically helpless.

G.S. § 14-27.3(a) (2001). When faced with a motion to dismiss, the issue is whether there is sufficient evidence in the record to establish every element of a crime and identify the accused as its perpetrator. *See State v. Earnhardt*, 307 N.C. 62, 65-66, 296 S.E.2d 649, 651-52 (1982). Upon consideration of a motion to dismiss, the evidence must be considered in the light most favorable to the State, giving the State the benefit of every reasonable inference that can be drawn from it. *Id.* at 67, 296 S.E.2d at 652-53.

Here, the victim testified that she was afraid of defendant and struggled with him physically to prevent intercourse. This testimony, taken in the light most favorable to the State, gives proof of both actual and constructive force sufficient to support defendant's conviction. This assignment of error is overruled.

VII

**[7]** Defendant's final assignment of error refers to the testimony of an assistant clerk of court whom defendant argues was a custodial officer in charge of the jury. Defendant asserts that the clerk's interaction with the jury as she swore them in disqualified her from testifying on behalf of the State. We disagree.

An officer of the court who is a custodial officer in charge of the jury is disqualified from testifying for the State. *State v. Mettrick*, 305 N.C. 383, 385, 289 S.E.2d 354, 356 (1982). Prejudice is conclusively presumed in those situations. *State v. Bailey*, 307 N.C. 110, 112, 296 S.E.2d 287, 289 (1982). However, the relationship between the State's witness and the jury must be scrutinized before the conclusive presumption of prejudice is applied. *State v. Mettrick*, 305 N.C. 383, 386, 289 S.E.2d 354, 356 (1982).

Here, the relationship between the jury and the assistant clerk who offered testimony for the State was not extensive enough to disqualify her testimony. The assistant clerk administered oaths to wit-

nesses and to the jury when it was empaneled. In addition, the assistant clerk also called the jury roll. There is no evidence that the assistant clerk's contacts with the jury were prejudicial to defendant in any way. Her interaction with the jury was entirely within the courtroom, as part of her job. At no point did she take control over the jury, nor did she transport them outside the courtroom. *See Mettrick*, 305 N.C. 383, 289 S.E.2d 354 (1982) (where testifying sheriff drove jury to court and to lunch and was alone with jury for almost three hours); *Bailey*, 307 N.C. 110, 296 S.E.2d 287 (1982) (where testifying sheriff took three jurors out to dinner after two different judges had instructed him not to have contact with jurors). Of similar import, the assistant clerk was never alone with any one juror or group of jurors. Since the assistant clerk's interaction with the jury was minimal, there was no error in permitting her testimony. This assignment of error is overruled.

In sum, we conclude that defendant received a fair trial free from prejudicial error.

No error.

Judges MARTIN and THOMAS concur.