IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA18-65

 Filed: 4 December 2018

Rowan County, Nos. 12 CRS 52458-59

STATE OF NORTH CAROLINA

 v.

JIMMY LEE FARMER

 Appeal by defendant from judgment entered 20 July 2017 by Judge Lori I.

Hamilton in Rowan County Superior Court. Heard in the Court of Appeals 4

September 2018.

 Attorney General Joshua H. Stein, by Assistant Attorney General Anna
 Szamosi, for the State.

 Edgerton Law Office, by Jarvis John Edgerton, IV, for defendant-appellant.

 BRYANT, Judge.

 Where defendant has not demonstrated that his constitutional right to a

speedy trial has been violated, we affirm the trial court’s ruling.

 On 7 May 2012, defendant Jimmy Lee Farmer was indicted in Rowan County

Superior Court for first-degree sex offense with a child and indecent liberties with a

child. The facts giving rise to the indictment showed that on 8 March 2012, four-

year-old Savannah1 was molested by defendant while visiting her grandmother’s

 1 A pseudonym is used to protect the identity of the minor child and for ease of reading.
 STATE V. FARMER

 Opinion of the Court

home. Savannah’s grandmother was married to defendant. One afternoon, while

visiting her grandmother’s house, Savannah was outside with her family and asked

to go inside for a snack. Defendant carried Savannah into the home and eventually

into the bedroom where he removed Savannah’s clothing and touched her genitals.

Savannah’s grandmother went inside and did not see them in the kitchen. She went

to the bedroom where she saw Savannah lying on the bed. When Savannah got off

the bed, she pulled her underwear up, and defendant rushed out of the room without

making eye contact. Savannah initially told her grandmother she was jumping on

the bed. However, she later told her mother defendant touched her. Savannah’s

mother called the Rowan County Sheriff’s Department to investigate, and defendant

was later arrested. Additional relevant facts later brought out at trial revealed that

defendant had sexually molested Savannah’s cousin when she was between the ages

of five and nine years old.

 Defendant waived arraignment on 24 May 2012 and 5 November 2012. On 15

July 2013, defendant filed a motion requesting a bond hearing to reduce his bond;

however, defendant’s motion was not calendared. Defendant’s trial was scheduled

for 30 January 2017 until defendant’s defense counsel and Paxton Butler, the

Assistant District Attorney (ADA) for Rowan County (hereinafter ADA), agreed to

continue the case and calendar it for the 17 July 2017 trial session. Nearly five years

after the indictment and a few weeks after his case was first scheduled for trial,

 -2-
 STATE V. FARMER

 Opinion of the Court

defendant filed a motion for a speedy trial on 6 March 2017 and requested that the

trial court either dismiss the case or establish a peremptory date for trial. On 11 July

2017, defendant filed a motion to dismiss alleging a violation of the right to a speedy

trial found in the North Carolina Constitution and the United States Constitution.

Per the motion, defendant had “the same counsel throughout the life of the case.”

 The matter came before the Honorable Lori I. Hamilton, Judge presiding, who

heard the motion on 17 July 2017 just prior to trial. Defendant called Amelia Linn,

Rowan County Assistant Clerk of Court, to testify regarding the motion to dismiss

based on a speedy trial violation. Linn testified that her office was the keeper of

records and she was the supervisor of the criminal division records. Linn also

testified that at least 65 trial sessions had occurred during the time between

defendant’s indictment and his trial. Additionally, the court records showed

defendant’s case was calendared for the 9 May 2012 session and then rescheduled for

the 30 January 2017 session. Between those two sessions, there was no trial activity

in defendant’s case and no subpoenas were issued.2 These records were admitted into

evidence without objection by the ADA.

 2 We note there was pre-trial activity in defendant’s case. On 29 July 2013, in response to
defendant’s motion, the court granted an order allowing funds for a private investigator. On 21
January 2014, defendant filed a motion for funds for an expert analyst, which was granted by the trial
court on 22 January 2014. The State filed for a protective order on 10 December 2013 precluding
copies of the DVD and pictures of the victim from being reproduced. Additionally, on 23 January and
12 July 2017, defendant filed two motions in limine–to exclude evidence of defendant’s 1983 murder
conviction of his wife and daughter, and to exclude evidence of prior bad acts–which the trial court
granted on 18 July 2017.

 -3-
 STATE V. FARMER

 Opinion of the Court

 After reviewing the evidence and representations made by both parties, the

trial court applied the factors in Barker v. Wingo, 407 U.S. 514, 33 L.Ed.2d 101 (1972)

(hereinafter the Barker factors) and determined that defendant’s right to a speedy

trial was not violated. Subsequently, defendant’s motion to dismiss was denied and

the State proceeded to trial. Defendant did not call any witnesses.

 On 20 July 2017, defendant was found guilty of both charges. Judge Hamilton

entered consecutive sentences of 338 months to 476 months with credit given for time

served while awaiting trial. Defendant immediately gave notice of appeal.

 _________________________________________________________

 On appeal, defendant argues the trial court erred by denying his motion to

dismiss because the State violated his constitutional right to a speedy trial.

Specifically, defendant argues that the State’s failure to calendar his trial date in a

timely manner was unreasonable as he waited approximately five years before his

jury trial. While this was a significantly long time to await trial, we disagree that

the five-year delay constituted a speedy trial violation based on the facts of this case.

 “The denial of a motion to dismiss on speedy trial grounds presents a question

of constitutional law subject to de novo review.” State v. Johnson, ___ N.C. App. ___,

___, 795 S.E.2d 126, 131 (2016). “We therefore consider the matter anew and

substitute our judgment for that of the trial court.” Id.

 The right to a speedy trial is different from other
 constitutional rights in that, among other things,

 -4-
 STATE V. FARMER

 Opinion of the Court

 deprivation of a speedy trial does not per se prejudice the
 ability of the accused to defend himself; it is impossible to
 determine precisely when the right has been denied; it
 cannot be said precisely how long a delay is too long; there
 is no fixed point when the accused is put to a choice of
 either exercising or waiving his right to a speedy trial; and
 dismissal of the charges is the only possible remedy for
 denial of the right to a speedy trial.

State v. McKoy, 294 N.C. 134, 140, 240 S.E.2d 383, 388 (1978) (citing Barker, 407 U.S.

at 514, 33 L.Ed.2d at 101).

 “In determining whether a defendant has been deprived of his right to

a speedy trial, [pursuant to] N.C. Const. art I, § 18; U.S Const. amend VI, our courts

consider four interrelated factors together with such other circumstances as may be

relevant.” State v. Chaplin, 122 N.C. App. 659, 662, 471 S.E.2d 653, 655 (1996)

(quotations omitted). These Barker factors include: “(1) the length of delay, (2) the

reason for the delay, (3) the defendant's assertion of his right to a speedy trial, and

(4) prejudice to the defendant resulting from the delay.” Id. (quoting State v. Groves,

324 N.C. 360, 365, 378 S.E.2d 763, 767 (1989)). “None of these [Barker] factors are

determinative; they must all be weighed and considered together[.]” State v.

Wilkerson, ___ N.C. App. ___, ___, 810 S.E.2d 389, 392 (2018).

 Length of Delay

 In the instant case, defendant was arrested and remained incarcerated for

nearly 63 months—approximately five years, two months and twenty-four days—

before his case was tried. While “the length of the delay is not per se determinative

 -5-
 STATE V. FARMER

 Opinion of the Court

of whether defendant has been deprived of his right to a speedy trial[,]” the “post[-

]accusation delay [is] presumptively prejudicial at least as it approaches one year.”

State v. Spivey, 357 N.C. 114, 119, 579 S.E.2d 251, 255 (2003) (quotations omitted).

Here, the length of the delay is significant enough to trigger an inquiry into the

remaining Barker factors.

 Reason for the Delay

 Second, defendant has the burden of showing that the
 delay was caused by the neglect or willfulness of the
 prosecution. Only after the defendant has carried his
 burden of proof by offering prima facie evidence showing
 that the delay was caused by the neglect or willfulness of
 the prosecution[,] must the State offer evidence fully
 explaining the reasons for the delay and sufficient to rebut
 the prima facie evidence.

Id. (citation omitted).

 Defendant argues there was administrative neglect by the State to calendar

his trial and motions. Specifically, defendant contends that the State allowed his

case to be idle while there were 77 administrative sessions and 78 trial sessions

between 2012 and 2017. The State acknowledged that there was a considerable delay

in calendaring defendant’s case. However, the State presented evidence of crowded

dockets and earlier pending cases given priority as a valid justification for the delay.

 According to the record, it is undisputed that the primary cause for defendant’s

delayed trial was due to a backlog of pending cases in Rowan County and a shortage

of staff of assistant district attorneys to try cases. The State asserts that, at

 -6-
 STATE V. FARMER

 Opinion of the Court

minimum, defendant also played a role in the delay as the record shows defendant

was still preparing his trial defense as of late 2014 when he requested funds to obtain

expert witnesses. Significantly, defendant filed his motion for a speedy trial after he

agreed to continue his case to the next trial session in 2017. Thus, defendant himself

acquiesced in the delay by waiting almost five years after indictment to assert a right

to speedy trial.

 Although case backlogs are not encouraged, we agree with the trial court’s

conclusion that defendant did not establish a prima facie case that the delay was

caused by neglect or willfulness of the prosecution. The record supports that neither

party assertively pushed for this case to be calendared before 2017, and after

defendant agreed to continue his case, scheduling conflicts prevented defendant’s

case from being calendared before 20 July 2017.

 Assertion of Right

 “A criminal defendant who vigorously asserts his right to a speedy trial will be

considered in a more favorable light than a defendant who does not.” State v.

Strickland, 153 N.C. App. 581, 587, 570 S.E.2d 898, 903 (2002). A “[d]efendant is not

required to demand that the state prosecute him” as it is the State’s duty to assure

that a defendant’s case is brought to trial in a timely fashion. State v. Pippin, 72 N.C.

App. 387, 395, 324 S.E.2d 900, 906 (1985). “But a defendant’s failure to assert his

speedy trial right, or his failure to assert the right sooner in the process [weighs]

 -7-
 STATE V. FARMER

 Opinion of the Court

against his contention that he has been denied his constitutional right to a speedy

trial. Johnson, ___ N.C. App. at ___, 795 S.E.2d at 133.

 Here, defendant formally asserted his right to a speedy trial on 6 March 2017,

almost five years after he was arrested. The trial court acknowledges in its findings

that at least two years following defendant’s arrest, defendant was still petitioning

the court for resources to develop his case. In 2013 and 2014, defendant filed motions

for expert funding to aid in his defense, both of which were granted. Although

defendant contends he did not have the authority to calendar his case sooner,

defendant did not take affirmative steps to bring his case to the court’s attention until

2017. Within four months of his assertion of a speedy trial right, defendant’s case

was calendared and tried. Given the short period between defendant’s demand and

his trial, defendant’s failure to assert his right sooner weighs against him in

balancing this Barker factor.

 Prejudice

 “Prejudice, of course, should be assessed in the light of the interests of

defendants which the speedy trial right was designed to protect.” Barker, 407 U.S.

at 532, 33 L. Ed. 2d at 118. In considering this factor, “[a] defendant must show

actual, substantial prejudice.” Spivey, 357 N.C. at 122, 579 S.E.2d at 257.

 The constitutional right to a speedy trial addresses three
 concerns: (i) to prevent oppressive pretrial incarceration;
 (ii) to minimize anxiety and concern of the accused; and (iii)
 to limit the possibility that the defense will be impaired.

 -8-
 STATE V. FARMER

 Opinion of the Court

 Of these concerns, most important is whether the
 prosecutor’s delay hampered defendant’s ability to present
 his defense.

Johnson, ___ N.C. App. at ___, 795 S.E.2d at 133 (citation and quotations omitted).

 Here, defendant contends he was prejudiced as the length of the delay could

have potentially affected the witnesses’ ability to accurately recall details, and

therefore, possibly impaired his defense. See Barker, 407 U.S. at 532–33, 33 L. Ed.

2d at 118 (“Loss of memory . . . is not always reflected in the record because what has

been forgotten can rarely be shown. . . . [I]f a defendant is locked up, he is hindered

in his ability to gather evidence, contact witnesses, or otherwise prepare his

defense.”). However, the victim, who was nine at the time she testified, was able to

recall details of the incident itself although she demonstrated some trouble

remembering details before and after the incident which occurred when she was three

years old. Other witnesses, however, testified and outlined the events from that day.

Also, as the trial court pointed out, defendant has had access to all the witnesses’

interviews and statements to review for his case and/or use for impeachment

purposes. Considering that the information was available to defendant, we do not

believe defendant’s ability to defend his case was impaired.

 Although defendant has not provided evidence or sufficiently argued pretrial

incarceration detrimentally impacted his life, we recognize the disadvantages

defendant could experience by the “restraints on his liberty and by living under a

 -9-
 STATE V. FARMER

 Opinion of the Court

cloud of anxiety, suspicion, and often hostility” while in confinement. Id. at 533, 33

L. Ed. 2d at 118. However, as we have previously discussed, defendant’s lack of

assertiveness in bringing his case to the court’s attention before 2017 contradicts his

argument of anxiety or concern about the status of his case. To some extent we are

inclined to believe “he had hoped to take advantage of the delay in which he had

acquiesced.” Id. at 535, 33 L. Ed. 2d at 119. Thus, after carefully balancing the delay

with potential prejudice, we remain unpersuaded by defendant’s argument that he

suffered prejudice as a result of the delay.

 Conclusion

 Having considered the Barker factors and other relevant circumstances, we

conclude that defendant has failed to demonstrate that his constitutional right to a

speedy trial was violated. Accordingly, we affirm the trial court’s denial of

defendant’s motion to dismiss.3

 AFFIRMED.

 Judge HUNTER, JR., concurs.

 Judge ARROWOOD dissents in separate opinion.

 3 We urge the trial court–and prosecutors in particular–to carefully attend to the backlog of
cases. The deprivation of a speedy trial is not taken lightly; especially those where, like here, pre-trial
incarceration extends for over five years. This is a significant delay that potentially infringes on
constitutional rights. Unlike the facts and circumstances in this case which did not show a clear
constitutional violation, a slight shift in relevant facts could have easily indicated unfair prejudice to
a defendant so as to require dismissal.

 - 10 -
 No. COA18-65 – State v. Farmer

 ARROWOOD, Judge, dissenting.

 I dissent. The majority spends a great deal of time detailing defendant’s

previous record and the despicable nature of the crime with which defendant was

charged. As I understand the requirements of Article I, Section 18 of the North

Carolina Constitution and the Sixth Amendment to the United States Constitution,

the right to a speedy trial does not turn on whether defendant is an upstanding

citizen. I also do not see where a defendant’s prior record or the heinous nature of

the crime is among the factors to be applied under the cases such as Barker v. Wingo

407 U.S. 514, 33 L. Ed. 2d 101 (1972), which have interpreted the considerations

relevant to whether the State has violated this right. See id. at 530-33, 33 L. Ed. 2d

at 115-19. Analyzing the factors to be applied, none of which support the State’s

position, I would find defendant demonstrated that his constitutional right to a

speedy trial was violated.

 Our Court considers “[t]he denial of a motion to dismiss on speedy trial grounds

. . . de novo[.]” State v. Johnson, __ N.C. App. __, __, 795 S.E.2d 126, 131 (2016)

(citation omitted).

 To determine “whether a defendant has been deprived of his right to a speedy

trial, N.C. Const. art I, § 18; U.S[.] Const. amend VI, our courts consider four

interrelated factors together with such other circumstances as may be relevant.”

State v. Chaplin, 122 N.C. App. 659, 662, 471 S.E.2d 653, 655 (1996) (citation and
 STATE V. FARMER

 ARROWOOD, J., dissenting

internal quotation marks omitted). These factors are: (1) the length of delay; (2) the

reason for the delay; (3) the defendant’s assertion of his right to a speedy trial; and

(4) the resulting prejudice to the defendant. State v. Groves, 324 N.C. 360, 365, 378

S.E.2d 763, 767 (1989) (citing Barker, 407 U.S. at 530-32, 33 L. Ed. 2d at 117-18)

(citation omitted). “No single factor is regarded as either a necessary or sufficient

condition to the finding of a deprivation of the right to a speedy trial.” State v. McKoy,

294 N.C. 134, 140, 240 S.E.2d 383, 388 (1978).

 Instead the factors and other circumstances are to be
 balanced by the court with an awareness that it is dealing
 with a fundamental right of the accused which is
 specifically affirmed in the Constitution. The burden is,
 nonetheless, on the defendant to show that his
 constitutional rights have been violated and a defendant
 who has caused or acquiesced in the delay will not be
 allowed to use it as a vehicle in which to escape justice.

Chaplin, 122 N.C. App. at 662-63, 471 S.E.2d at 655 (citations and internal quotation

marks omitted).

 I. Length of Delay

 I agree with the majority that the delay in this case, five years, two months

and twenty-four days, is presumptively prejudicial. See State v. Spivey, 357 N.C. 114,

119, 579 S.E.2d 251, 255 (2003). Therefore, the length of the delay triggers an inquiry

into the remaining Barker factors. In addition, this is not an isolated incident in this

judicial district. This is the second case this Court has considered from this district

within the last year where there has been a delay of over five years in bringing a case

 2
 STATE V. FARMER

 ARROWOOD, J., dissenting

to trial. Such delays not only affect defendants, but also the victims, who are held in

limbo and unable to put the offenses in the past and attempt to heal and move on

with their lives without the potential of having to relive the incidents through

testimony many years in the future.

 II. Reason for the Delay

 “[D]efendant has the burden of showing that the delay was caused by the

neglect or willfulness of the prosecution.” State v. Grooms, 353 N.C. 50, 62, 540

S.E.2d 713, 721 (2000) (citation omitted), cert. denied, 534 U.S. 838, 151 L. Ed. 2d 54

(2001). Once a defendant “makes a prima facie showing that the delay resulted from

neglect or willfulness by the State, the burden shifts to the State to provide a neutral

explanation for the delay.” Johnson, __ N.C. App. at __, 795 S.E.2d at 131 (citation

and internal quotation marks omitted).

 Here, defendant alleges administrative neglect by the State. Unlike the

majority, I would hold defendant established a prima facie case that the delay was

due to the prosecution’s neglect, as “[a] showing of a particularly lengthy delay

establishes a prima facie case that the delay was due to the neglect or wilfulness of

the prosecution[.]” Chaplin, 122 N.C. App. at 663, 471 S.E.2d at 655-56 (citations

and internal quotation marks omitted). Therefore, the State must offer evidence fully

explaining the reasons for the delay that are sufficient to rebut defendant’s prima

facie showing.

 3
 STATE V. FARMER

 ARROWOOD, J., dissenting

 To rebut defendant’s case, the State maintains: (1) defendant acquiesced to

the delay, and (2) Rowan County’s dockets were overcrowded.

 First, I disagree that defendant acquiesced to the delay. Admittedly, defendant

moved for expert funding in 2013 and 2014, agreed to the State’s request to continue

the case from the January 2017 calendar to the next trial session, and waited over

four years to file the instant motion. However, these facts are insufficient to show

that defendant consented to the entirety of the five year, two month and twenty-four

day delay in bringing the case to trial.

 Defendant’s efforts to refine his case in 2013 and 2014 while awaiting trial do

not demonstrate an agreement to delay trial, and defendant’s agreement to the

State’s request to continue the trial from January 2017 to the next trial term only

shows acquiescence to the passage of 1 of the 78 trial sessions held while defendant

was incarcerated.4 Additionally, although the trial court’s finding that defendant

waited over four years to file the motion at issue weighs against defendant’s

argument that he was deprived of his right to a speedy trial, the last minute nature

of the motion does not show defendant assented to the State’s delay of his trial.

 Second, while I agree that congested dockets can constitute a valid basis for

delay, responsibility for such delay nonetheless belongs to the State and ultimately

 4 Although the trial court found that “it appears that both parties acted in good faith with one
another in scheduling the matters for trial as soon as practicable” after 30 January 2017, this finding,
without more, does not suffice to show defendant acquiesced in the delay of his trial until July 2017,
particularly given that he filed the motion for speedy trial in March 2017.

 4
 STATE V. FARMER

 ARROWOOD, J., dissenting

weighs against the State. Johnson, __ N.C. App. at __, 795 S.E.2d at 132.

Additionally, the reason for delay is closely associated with the length of delay. State

v. Pippin, 72 N.C. App. 387, 392-93, 324 S.E.2d 900, 904-905 (1985). In light of these

considerations, and the lack of additional basis for the delay, I would hold that the

extensive delay before us is outside of constitutional bounds. This result is supported

by our Court’s recent unpublished opinion, State v. Smith, __ N.C. App. __, 814 S.E.2d

485, 2018 WL 2648289 (N.C. Ct. App. June 5, 2018) (unpublished), which both the

State and defendant discuss on appeal.

 In Smith, our Court considered another case delayed by the crowded docket in

Rowan County Superior Court, in which over five and a half years passed between

the defendant’s arrest in April 2011 and his trial in November 2016. Smith, __ N.C.

App. at __, 814 S.E.2d at __, 2018 WL 2648289 at *3. Without deciding whether

defendant met his prima facie burden, our Court held that, regardless, there was

“sufficient evidence . . . to support the trial court’s conclusions that the State’s reasons

for delay were ‘reasonable and valid justifications for delay in this case[.]’ ” Id. at __,

814 S.E.2d at __, 2018 WL 2648289 at *4. These reasons were: the overcrowding of

the Rowan County Superior Court docket, the victim recanted, creating the need for

additional law enforcement investigation, defendant’s counsel was permitted to

withdraw from representation when he was elected as a district court judge,

defendant’s attorneys never filed a motion or request to calendar defendant’s case for

 5
 STATE V. FARMER

 ARROWOOD, J., dissenting

trial, and the State never refused a request to calendar the case for trial. Id.

“Additionally, weighing against defendant, the court made findings that defendant’s

counsel discussed . . . filing a speedy trial motion with defendant early on in the case

but they agreed not to push for a trial because time might work to their benefit.” Id.

Thus, although there was a lengthy period of incarceration prior to trial, we held that

the “delays attributable to the defense outweigh the crowded docket and” weigh the

reason for delay against defendant. Id. at __, 814 S.E.2d at __, 2018 WL 2648289 at

*5. Here, as discussed, the trial court did not find significant delays attributable to

the defense as in Smith. In particular, there is no evidence that defendant was using

the delay as trial tactic hoping the delay would aid in getting the victim to recant the

allegations as was shown in Smith.

 In addition, while the reason for the delay may be an overcrowded docket and

not due to willfulness related to the staff of the District Attorney’s office, the State

has the responsibility to adequately fund the criminal justice system with sufficient

prosecutors and other court personnel to timely dispose of cases. In my view it is

totally unacceptable to have judicial districts where both crime victims and those

accused of the crimes are waiting over five years for those charges to be resolved

because there are not enough resources to try the cases sooner.

 Our State has an obligation to adequately fund the judicial system to meet

constitutional requirements. This obligation is demonstrated by the State’s

 6
 STATE V. FARMER

 ARROWOOD, J., dissenting

obligation to provide counsel for indigent defendants pursuant to Gideon v.

Wainwright, 372 U.S. 335, 9 L. Ed. 2d 799 (1963). See State v. Morris, 275 N.C. 50,

56-57, 165 S.E.2d 245, 249 (1969); see also Boyer v. Louisiana, 569 U.S. 238, 246, 185

L. Ed. 2d 774, 779 (2013) (Sotomayor, J., dissenting from dismissal of writ of

certiorari) (applying the logic of Vermont v. Brillon, 556 U.S. 81, 173 L. Ed. 2d 231

(2009), in which the Supreme Court noted that, in evaluating speedy trial claims,

“[d]elay resulting from a systemic breakdown in the public defender system could be

charged to the State[,]” id. at 94, L. Ed. 2d at 242, Justice Sotomayor opined that

“[w]here a State has failed to provide funding for the defense and that lack of funding

causes a delay, the defendant cannot reasonably be faulted” in evaluating a speedy

trial claim).

 Similarly, here, the State has an obligation to fund the criminal justice system

in a way that does not violate a suspect’s Sixth Amendment right to a speedy trial

and the public’s expectation of timely justice. See Spivey, 357 N.C. at 131 n. 2, 579

S.E.2d at 263 n. 2 (Brady, J., dissenting) (“At some point . . . budgetary constraints

can no longer justify . . . waiting periods for criminal defendants. . . . [C]rowded

dockets . . . must eventually yield to both a suspect’s Sixth Amendment right to a

speedy trial and the public’s expectation of timely justice.”).

 Moreover, the successful and efficient administration of government assumes

the legislative branch will fulfill this obligation. Where it fails to do so, it is the fault

 7
 STATE V. FARMER

 ARROWOOD, J., dissenting

of the State and judicial oversight must protect an accused’s right to a speedy trial.

Therefore, this factor should be weighed against the State.

 III. Assertion of Right

 “A defendant is not required to assert his right to a speedy trial in order to

make a speedy trial claim on appeal.” Johnson, __ N.C. App. at __, 795 S.E.2d at 132-

33 (citation omitted). However, the “failure to assert his speedy trial right, or his

failure to assert the right sooner in the process, does weigh against his contention

that he has been denied his constitutional right to a speedy trial.” Id. at __, 795

S.E.2d at 133 (citation and internal quotation marks omitted).

 Here, defendant asserted his right to a speedy trial four years and eleven

months after he was arrested, and the case was called for trial less than four months

later. The eleventh-hour nature of this motion carries only minimal weight in

defendant’s favor. See id.

 IV. Prejudice

 I disagree with the majority’s conclusion that defendant did not suffer

prejudice as a result of the delay. I would hold that defendant established the

presumptive prejudice that naturally accompanies an extended pretrial

incarceration.

 “Prejudice[ ] should be assessed in the light of the interests of defendants which

the speedy trial right was designed to protect.” Pippin, 72 N.C. App. at 396, 324

 8
 STATE V. FARMER

 ARROWOOD, J., dissenting

S.E.2d at 906 (alteration, citation and internal quotation marks omitted). The

constitutional right to a speedy trial: (i) prevents oppressive pretrial incarceration;

(ii) minimizes the accused’s anxiety and concern; and (iii) limits the possibility that

the defense will be impaired. Id. (citation omitted).

 Arrest is a public act that may seriously interfere with the
 defendant’s liberty, whether he is free on bail or not, and
 that may disrupt his employment, drain his financial
 resources, curtail his associations, subject him to public
 obloquy, and create anxiety in him, his family and his
 friends.

Id. at 396, 324 S.E.2d at 907 (citations and internal quotation marks omitted).

 Here, the majority determined defendant was not prejudiced because

defendant’s ability to defend his case was not impaired, and defendant did not

demonstrate that his incarceration detrimentally impacted his life. While I agree the

delay did not impede defendant’s ability to defend his case, I would hold that

defendant established the presumptive prejudice that naturally accompanies an

extended pretrial incarceration. Nonetheless, absent a more concrete showing of

actual prejudice, this fourth factor weighs only slightly in defendant’s favor.

 V. Conclusion

 Having considered the Barker factors and the relevant circumstances before

the Court, I would hold defendant demonstrated that his constitutional right to a

speedy trial was violated. Accordingly, I would reverse the trial court’s denial of

defendant’s motion.

 9
 STATE V. FARMER

ARROWOOD, J., dissenting

 10