An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-1009

Filed 3 December 2025

Forsyth County, Nos. 16CR053781-330, 16CR055182-330, 22CR000572-330

STATE OF NORTH CAROLINA

v.

HARRY LEE HUNTER, JR.

Appeal by Defendant from Judgments entered 16 November 2023 by Judge William A. Long, Jr., in Forsyth County Superior Court. Heard in the Court of Appeals 11 September 2025.

*Attorney General Jeff Jackson, by Special Deputy Attorney General Benjamin Szany, for the State.*

*Appellate Defender Glenn Gerding, by Assistant Appellate Defender James R. Grant, for Defendant-Appellant.*

HAMPSON, Judge.

**Factual and Procedural Background**

Harry Lee Hunter, Jr., (Defendant) appeals from Judgments entered upon jury verdicts finding him guilty of First Degree Murder, Discharging a Firearm into

Occupied Property, and Possession of a Firearm by a Felon. The Record before us, including evidence presented at trial, tends to reflect the following:

In the early hours of 30 April 2016, Joshua Brown was shot twice in the back while climbing into a relative's minivan. Brown was part of a group leaving a party at his relative's residence in Winston-Salem. He later died from the gunshot wounds.

Eyewitness interviews conducted on the day of the shooting led officers of the Winston-Salem Police Department (WSPD) to the Facebook profile of a "Harry TJ Hunter Junior." Images from the Facebook account matched witness descriptions of the suspected shooter. WSPD officers conducted photo lineups with two eyewitnesses, both of whom selected a photograph of Defendant as the person who shot Joshua Brown.

Defendant was arrested in Broward County, Florida, on 12 May 2016. On 19 May 2016, Defendant waived extradition and law enforcement transported him back to North Carolina, where he was placed in custody.[1]

On 2 August 2016, while in the Forsyth County jail, Defendant was charged with First Degree Murder and Possession of Firearm by a Felon. Attorney Vincent Rabil was appointed to represent Defendant the next day. Subsequently, Defendant complained about Mr. Rabil's representation and asked for a different lawyer. Mr.

---

[1] Upon his return to North Carolina from Florida in May 2016, Defendant began serving an active sentence in the Department of Adult Corrections for a post-release probation revocation. He was writ back to Forsyth County on 29 July 2016. The post-release parole hold expired on 6 March 2017. Thereafter, Defendant was held in Forsyth County jail on the charges at issue in this appeal.

Rabil withdrew from the case.[2] Attorney Jason Crump was appointed attorney of record for Defendant on 1 September 2016.

Mr. Crump filed a Demand for a Speedy Trial on Defendant's behalf on 16 February 2017. On 13 March 2017, Assistant District Attorney Jessica Spencer (ADA Spencer) emailed Mr. Crump requesting to discuss potential trial dates. Three days later, at Defendant's request, Mr. Crump moved to withdraw as Defendant's attorney; the trial court granted his motion. Attorney Julie Boyer was appointed on 21 March 2017 but withdrew five days later due to inappropriate behavior by Defendant.

Attorney David Freedman was appointed to represent Defendant on 28 March 2017. In April 2017, a grand jury indicted Defendant for First Degree Murder and Possession of Firearm by a Felon.[3] Chief ADA Jennifer Martin emailed Mr. Freedman on 28 July 2017 to ask if he had received the discovery file from Defendant's prior lawyer. An employee in Mr. Freedman's office replied that Mr. Freedman had not yet received the file. The employee added that Mr. Freedman did not have time to work on Defendant's case at that moment because he was in the middle of another murder trial. That trial concluded on 9 August 2017.

The Forsyth County District Attorney (DA) offered a plea to Defendant on 21 September 2017. Defendant did not accept this plea offer.

---

[2] The Record does not indicate the date Mr. Rabil withdrew as counsel.
[3] Superseding indictments were issued on 1 August 2022 for Possession of Firearm by a Felon and Discharging a Firearm Into Occupied Property.

ADA Spencer emailed Mr. Freedman on 29 March 2018 and "indicated she would like to have a trial date agreed upon by April 26, 2018." On 1 April 2018, Mr. Freedman requested a forensic evaluation of Defendant to assess his capacity to proceed to trial. However, this request was not acted upon because a judge did not sign it. Mr. Freedman submitted a second forensic evaluation request on 22 May 2018, which a judge signed, and Defendant was transported to Central Regional Hospital in Raleigh for evaluation.

On 24 August 2018, Dr. Thomas Owens met with Defendant for an initial forensic evaluation. After this meeting, Dr. Owens requested a second meeting with Defendant "to get more information in order to form his opinion" about Defendant's competence. On 3 December 2018, at the request of Mr. Freedman and Dr. Owens, ADA Spencer moved to commit Defendant for evaluation; the trial court granted the motion. Dr. Owens performed the second evaluation on 4 January 2019 and submitted a report expressing his opinion Defendant was competent to stand trial.[4]

ADA Spencer and Mr. Freedman exchanged emails on 23 January 2019. ADA Spencer conveyed the update about Dr. Owens's report finding Defendant competent to proceed and sought to set a date for trial. Mr. Freedman asked ADA Spencer to resend the plea offer so he could discuss it with Defendant; ADA Spencer did so.

---

[4] The trial court issued an Order sealing all forensic evaluations of Defendant to protect private medical information. Thus, such reports are not in the Record.

About six weeks later, on 5 March 2019, ADA Spencer informed a colleague by email that Mr. Freedman had agreed to a trial date of 19 August 2019. Sometime thereafter, Mr. Freedman orally asked ADA Spencer to postpone the trial. On 1 July 2019, the attorneys agreed by email to reschedule for 12 November 2019. Subsequently, Mr. Freedman again made a "verbal request" to ADA Spencer to postpone the trial; ADA Spencer again acquiesced. On 6 January 2020, ADA Spencer emailed Mr. Freedman to discuss scheduling; the next day, the attorneys agreed to a 29 June 2020 trial date.

The COVID-19 pandemic then intervened. Governor Roy Cooper declared a state of emergency on 10 March 2020. Three days later, the Chief Justice of the North Carolina Supreme Court issued a statewide order delaying all Superior Court proceedings for thirty days. In April 2020, the DA's office and Mr. Freedman exchanged emails about potentially scheduling the trial for November. However, due to COVID-19, court closures and restrictions were repeatedly extended; Forsyth County Superior Court ultimately did not hold major criminal jury trials for the rest of 2020 and all of 2021. The restriction on the type of cases the State could call to trial was not lifted until 26 January 2022.

Mr. Freedman filed a second speedy trial Demand on 14 May 2021. On 20 May 2021, the trial court heard a motion by Defendant to lower his bond. At this hearing, the trial court also considered Defendant's claims that Mr. Freedman was not providing effective representation. Defendant had sent letters to the trial court

complaining about Mr. Freedman's services. At the hearing, however, Defendant indicated he was satisfied with his attorney. The trial court set a tentative trial date of 8 November 2021 and denied Defendant's bond motion.

In June 2021, ADA Spencer emailed Mr. Freedman to confirm the 8 November 2021 trial date.[5] In apparent reference to a prior conversation with Mr. Freedman, ADA Spencer stated they had agreed to this date because Mr. Freedman had other trials scheduled in the meantime.

Mr. Freedman unexpectedly died on 3 September 2021. Attorney Daniel Anthony was appointed counsel for Defendant on 8 October 2021. That day, Mr. Anthony and ADA Spencer corresponded by email and discussed a tentative trial date of 27 June 2022. By mutual agreement of the DA and Mr. Anthony, the trial was later pushed back two weeks to accommodate a scheduling conflict for the State. In June 2022, Dr. James Hilkey forensically evaluated Defendant at defense counsel's request. Dr. Hilkey submitted his opinion that Defendant was competent to stand trial on 2 July 2022.

### First Trial: July 2022

Defendant's first trial began on 11 July 2022. At a bench hearing on several pretrial motions, Mr. Anthony moved *in limine* to cross-examine a State's witness,

---

[5] It is not clear when in June 2021 ADA Spencer sent this confirmation email to Mr. Freedman. The State's written Motion states it was sent "June 3, 2021." But at the 11 July 2022 speedy trial motion hearing, ADA Spencer stated "on June 30th, 2021, I sent a confirmation email to Mr. Freedman where we had agreed upon another date of November 8th, 2021." The email itself is not in the Record.

Demond Burrell, with evidence of Burrell's convictions for crimes of moral turpitude that were more than ten years old. The trial court allowed this motion.

Mr. Anthony also moved to dismiss the case for a violation of Defendant's speedy trial rights. Mr. Anthony argued dismissal was proper because Defendant had "been in custody now for over six years awaiting trial" and the State had failed to "appropriately try this matter in a speedy manner." However, Mr. Anthony acknowledged multi-year delays in homicide trials were common and the "shutdown of the court system" due to COVID-19 had added "another year or so" to the delay. Still, the six-year delay was "excessive" and prejudicial. Defendant's bond was "clearly well beyond his means" and continuous pretrial incarceration since his May 2016 arrest had prejudiced his ability to prepare his defense. Additionally, Mr. Anthony forecast Defendant may be prejudiced by testimony from State's eyewitnesses who had "no recollection or memory of what occurred, or very little." The State would have to "remind [these witnesses] of what they said before," a prospect that was "highly disturbing."

In its argument, the State relied on a written Motion in Opposition to Defendant's Motion to Dismiss for Speedy Trial Violations. Among its contentions, the State asserted Defendant and his attorneys had caused much of the delay. It claimed the DA's office had "attempted to set and then reset trial dates at the request of the defense." In particular, during his tenure, Mr. Freedman had "continually requested" to postpone trial "to fit his schedule." As to Defendant's claim of prejudice

resulting from pretrial incarceration, the State noted multiple trial judges had declined to modify his bond, raising an inference that those judges did not consider Defendant's continued incarceration prejudicial to his case. Additionally, a State's eyewitness had died prior to trial, which it argued "is more prejudicial to the State in its effort to prove its case."

The trial court orally denied Defendant's speedy trial Motion and entered a written Order. In pertinent part, the trial court made factual Findings:

> 4. That [Attorney Jason Crump] filed a speedy trial motion before any indictments were handed down from the Grand Jury.
>
> 5. That in March of 2017, at the Defendant's request, Mr. Crump made a motion to withdraw, which was allowed, and attorney Julie Boyer was appointed. She withdrew five days later because of actions by the Defendant. Subsequently, Mr. David Freedman was appointed as counsel-of-record.
>
> . . . .
>
> 15. That [Mr. Freedman] had filed a second speedy trial motion on behalf of the Defendant, inasmuch as everyone considered the previous speedy trial motion abandoned since the Defendant requested Mr. Crump to withdraw, in which Mr. Crump did.
>
> . . . .
>
> 18. That there have been bond motions for the Defendant in front of at least three separate Superior Court Judges, and that none have lowered his bond nor criticized the length of time for which he had been in custody.
> 19. That although the length of time is somewhat unusual for this type of case in this county, it's not dispositive of the speedy trial motion.

20. That numerous factors caused this delay, some of which were attributable to the Defendant and some which were not, and a lot of which were not attributable to any fault on behalf of the State.

21. That in that period of time, the Defendant has filed only one speedy trial motion that wasn't determined to be abandoned.

22. That the Defendant has given no forecast of any witnesses whose memories have dulled because of the length of time. And in fact, a State's witness has died, which would tend to be more prejudicial to the State than to the Defendant.

The trial court then made four Conclusions of Law:

1. That the length of the delay from the time the Defendant was charged to this date was unreasonable.

2. That the causes of the delay were attributable both to the State and the Defendant, but were unavoidable because of the reasons enumerated above.

3. That this motion is the only speedy trial motion that has been heard on behalf of the Defendant.

4. That the Defendant has demonstrated no prejudice, actual or substantial, that in any way he has been prejudiced by the delay.

The first trial ended in a mistrial after the trial court granted Mr. Anthony's motion to withdraw on 12 July 2022. The trial court found Defendant's "willful behavior and misbehavior" had made it "nearly impossible for any lawyer to effectively and ethically represent him." The trial court concluded Defendant had forfeited his right to court-appointed counsel and declared a mistrial on its "own motion because . . . [Defendant now had] no defense counsel." A new trial was set for October 2022.

Second Trial: October 2022

The second trial began on 24 October 2022. Defendant represented himself. After the jury deadlocked, the trial court declared a mistrial at Defendant's request.

Third Trial: August 2023

The third trial took place in August 2023. Defendant was reappointed counsel; Attorney Jerry Jordan represented him. Defendant was granted a third mistrial based on the admission of police body camera footage containing prejudicial testimony which the State inadvertently failed to redact.

Fourth Trial: November 2023

The fourth and final trial took place in November 2023; Mr. Jordan again represented Defendant. Unlike Mr. Anthony, Defendant's lawyer at his first trial, Mr. Jordan did not raise the issue of witness Demond Burrell's convictions for crimes of moral turpitude in pretrial motions or seek to impeach Burrell's credibility with evidence of the convictions.

Burrell testified Defendant had shot Joshua Brown, though he admitted he never saw Defendant with a gun and did not see anybody pull the trigger.

The jury found Defendant guilty of all three offenses. The trial court sentenced Defendant to life without parole for First Degree Murder and Discharging a Firearm Into Occupied Property, followed by a consecutive sentence of 19-32 months for Possession of a Firearm by a Felon. Defendant orally entered Notice of Appeal.

**Issues**

The issues are whether: (I) the trial court erred by denying Defendant's Motion to Dismiss for a violation of his right to a speedy trial; (II) remand for a new hearing on Defendant's speedy trial Motion is appropriate; and (III) the Record is sufficient to review Defendant's ineffective assistance of counsel (IAC) claim on direct review.

## Analysis

I.  Speedy Trial

"The denial of a motion to dismiss on speedy trial grounds presents a constitutional question of law subject to *de novo* review." *State v. Farook*, 381 N.C. 170, 178, 871 S.E.2d 737, 746 (2022) (citation omitted). "In reviewing the denial of a motion to dismiss for a speedy-trial violation, '[w]e review the superior court's order to determine whether the trial judge's underlying findings of fact are supported by competent evidence and whether those factual findings in turn support the judge's ultimate conclusions of law.' " *State v. Spinks*, 277 N.C. App. 554, 561, 860 S.E.2d 306, 314 (2021) (quoting *State v. Wilkerson*, 257 N.C. App. 927, 929, 810 S.E.2d 389, 391 (2018)). Conclusions of law are reviewed de novo. *State v. Williams*, 362 N.C. 628, 632, 669 S.E.2d 290, 294 (2008) (citation omitted).

Criminal defendants are guaranteed the right to a speedy trial under both the Sixth Amendment to the United States Constitution, as applied to the States through the Fourteenth Amendment, and Article I, Section 18 of the North Carolina Constitution. *State v. Crisp*, 297 N.C. App. 400, 401-02, 910 S.E.2d 726, 731 (2024); U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right

to a speedy and public trial[.]"); N.C. Const. art. I, § 18 ("[J]ustice shall be administered without favor, denial, or delay."). The relevant period of time for a speedy trial analysis is the time between the State's formal accusation of the defendant and the defendant's trial. *State v. Hammonds*, 141 N.C. App. 152, 159, 541 S.E.2d 166, 172 (2000), *aff'd* 354 N.C. 353, 554 S.E.2d 645 (2001) (Mem.), *cert. denied*, 536 U.S. 907, 122 S. Ct. 2363 (2002) (Mem.) (citation omitted).

We review speedy trial challenges using the analysis set forth by the United States Supreme Court in *Barker v. Wingo*, 407 U.S. 514, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972). "To prove a speedy trial violation, a criminal defendant must first show that the length of the delay in his case is so presumptively prejudicial that it warrants a full constitutional review of his claim under *Barker*." *Farook*, 381 N.C. at 178, 871 S.E.2d at 746 (citation omitted). "[A]s the term is used in this threshold context, 'presumptive prejudice' does not necessarily indicate a statistical probability of prejudice; it simply marks the point at which courts deem the delay unreasonable enough to trigger the *Barker* enquiry." *Doggett v. United States*, 505 U.S. 647, 652 n.1, 112 S. Ct. 2686, 2691 n.1, 120 L. Ed. 2d 520 (1992) (citation omitted). A delay exceeding one year is generally considered presumptively prejudicial and thus sufficient to trigger a full *Barker* analysis. *Farook*, 381 N.C. at 178-79, 871 S.E.2d at 746 (citations omitted); *e.g.*, *State v. Webster*, 337 N.C. 674, 679, 447 S.E.2d 349, 351 (1994) (delay of sixteen months triggered examination of other *Barker* factors).

Here, Defendant was arrested on 12 May 2016. His first trial began on 11 July 2022. Thus, Defendant's trial was delayed for approximately six years and two months, which triggers full constitutional review under *Barker*.

We weigh four factors in a *Barker* analysis: (1) the length of the delay, (2) the reasons for the delay, (3) the defendant's assertion of his right to a speedy trial, and (4) whether the defendant suffered prejudice as a result of the delay. *Barker*, 407 U.S. at 530, 92 S. Ct. at 2192. We consider "the conduct of both the prosecution and the defendant" in the *Barker* "balancing test." *Id.* at 530, 92 S. Ct. at 2191-92 (footnote omitted). No single factor is regarded as either a necessary or sufficient condition to the finding of a deprivation of the right to a speedy trial. *Id.* at 533, 92 S. Ct. at 2193. Rather, we "engage in a difficult and sensitive balancing" of the four factors and other relevant circumstances. *Id.* (footnote omitted). We examine each factor below.

A. *Length of Delay*

The length of the delay is both the triggering mechanism for analysis of the other three *Barker* factors and an independent factor. *Farook*, 381 N.C. at 178, 871 S.E.2d at 746. "[S]ome delay is inherent and must be tolerated in any criminal trial; for example, the state is entitled to an adequate period in which to prepare its case for trial." *State v. Pippin*, 72 N.C. App. 387, 391-92, 324 S.E.2d 900, 904 (1985) (citations omitted). "[M]ere length of delay, standing alone, does not establish that the delay was unreasonable or prejudicial[.]" *State v. Groves*, 324 N.C. 360, 366, 378 S.E.2d 763, 767 (1989) (citations omitted).

Here, as stated above, Defendant's trial was delayed for approximately six years and two months.[6] The trial court concluded this delay was "unreasonable." We agree. While the delay does not constitute a per se violation of Defendant's right to a speedy trial, it is sufficiently long to weigh in favor of Defendant. *See Wilkerson*, 257 N.C. App. at 930, 810 S.E.2d at 392 (holding delay of three years and nine months sufficient for length of delay factor to weigh in favor of defendant).

B. *Reasons for Delay*

Next, we address the reasons for the delay. "[The] defendant has the burden of showing that the delay was caused by the *neglect* or *willfulness* of the prosecution."

---

[6] The State contends that the delay was shorter, arguing "[l]ess than six years passed between the charge and Defendant's first trial." The State claims the speedy trial clock started when Defendant was charged with murder in August 2016 rather than upon his arrest in May 2016 in Florida. However, the speedy trial right is triggered upon a formal accusation, i.e., when the State formally accuses a defendant of a crime by means of arrest, indictment, or other official accusation, whichever occurs first. *Doggett*, 505 U.S. at 655, 112 S. Ct. at 2692; *Pippin*, 72 N.C. App. at 391, 324 S.E.2d at 904 ("It is well-established that a defendant's right to a speedy trial attaches upon being formally accused of criminal activity, whether by arrest or indictment." (citation omitted)). An arrest, even prior to a formal charge, is a form of accusation that triggers speedy trial protections; the State "constitute[s] [a defendant] an 'accused' when it arrest[s] him and thereby commence[s] its prosecution of him." *Dillingham v. United States*, 423 U.S. 64, 65, 96 S. Ct. 303, 303, 46 L. E. 2d 205 (1975) (per curiam). "[I]t is either a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge that engage the particular protections of the speedy trial provision of the Sixth Amendment." *United States v. Marion*, 404 U.S. 307, 320, 92 S. Ct. 455, 463, 30 L. Ed. 2d 468 (1971).

Here, the first warrant for Defendant's arrest was issued on the day of the shooting, 30 April 2016, for a possession of firearm by a felon charge for an offense Defendant allegedly committed that day. A WSPD officer who investigated the shooting testified: "we originally charged [Defendant] with a firearm by felon charge. So once he was arrested on that, we did go attempt to speak with him in Florida." The officer further testified: "after [Defendant] was arrested on the firearm by felon warrant, we later took out a murder warrant." Thus, Defendant was first "accused" of a crime related to the shooting of Joshua Brown when he was arrested on 12 May 2016 in Florida on the basis of the arrest warrant issued 30 April 2016. Therefore, the speedy trial clock began to run on 12 May 2016. Consequently, the State's contention that the delay was shorter than six years has no merit. Even if we accepted, arguendo, the State's version of the timeline, a delay from August 2016 to July 2022, or about five years and eleven months, would be sufficient to trigger a full *Barker* analysis.

*State v. Spivey*, 357 N.C. 114, 119, 579 S.E.2d 251, 255 (2003) (emphasis in original) (citation omitted). A delay of one year "is generally recognized as long enough to create a 'prima facie showing that the delay was caused by the negligence of the prosecutor,'" which is "sufficient to shift the burden of proof to the State 'to rebut and offer explanations for the delay.'" *Farook*, 381 N.C. at 179, 871 S.E.2d at 746-47 (quoting *Wilkerson*, 257 N.C. App. at 930, 810 S.E.2d at 392). Here, the six-year delay establishes Defendant's prima facie showing of prosecutorial neglect and shifts the burden to the State to offer evidence explaining the delay.

"Different reasons [for delay] are assigned different weights, but only 'valid reason[s]' are weighed in favor of the State." *Wilkerson*, 257 N.C. App. at 930, 810 S.E.2d at 392 (quoting *Barker*, 407 U.S. at 531, 92 S. Ct. at 2192). The State is permitted "good-faith delays" that are "reasonably necessary" to prepare its case but is prohibited from "purposeful or oppressive delays and those which the prosecution could have avoided by reasonable effort." *Hammonds*, 141 N.C. App. at 160, 541 S.E.2d at 173 (citation and quotation marks omitted). As such, deliberate delays by the State "to hamper the defense" are "weighted heavily" against the prosecution. *Barker*, 407 U.S. at 531, 92 S. Ct. at 2192. By comparison, "[a] more neutral reason such as negligent delay or a valid administrative reason such as the complexity of the case or a congested court docket is weighted less heavily against the State than is a deliberate delay." *Farook,* 381 N.C. at 180, 871 S.E.2d at 747 (citing *Barker*, 407 U.S. at 531, 92 S. Ct. at 2192). Moreover, a "valid reason for delay, such as delay caused

by difficulty in locating witnesses, serves to justify appropriate delay." *Id.* at 180, 871 S.E.2d at 747 (citing *Barker*, 407 U.S. at 531, 92 S. Ct. at 2182). Finally, "[d]elays occasioned by acts of the defendant or on his or her behalf are heavily counted against the defendant and will generally defeat his or her speedy trial claim." *Id.* at 180-81, 871 S.E.2d at 747-48 (citing *Vermont v. Brillon*, 556 U.S. 81, 89, 129 S. Ct. 1283, 1290, 173 L. Ed. 2d 231 (2009)). The category of "delays attributable to the defendant" includes delays caused by defense counsel, "[b]ecause the attorney is the [defendant's] agent when acting, or failing to act, in furtherance of the litigation." *Brillon*, 556 U.S. at 90-91, 129 S. Ct. at 1290-91 (citation and quotation marks omitted).

Here, the trial court found "numerous factors caused this delay, some of which were attributable to the Defendant and some of which were not, and a lot of which were not attributable to any fault on behalf of the State." Defendant concedes "valid reasons" explain significant portions of the delay, such as court closures and restrictions caused by the pandemic, forensic evaluations of Defendant at the request of defense counsel, and delays following Mr. Freedman's unexpected death. Such "valid reasons" for the delay weigh in favor of the State. *See Wilkerson*, 257 N.C. App. at 930, 810 S.E.2d at 392.

However, Defendant contends the trial court erred because its Order failed to "fully explain" the reasons for a specific fifteen-month period of the delay, from January 2019 to March 2020. Defendant cites *State v. McKoy* to support this argument. 294 N.C. 134, 240 S.E.2d 383 (1978). In *McKoy*, our Supreme Court held

that where a "defendant carries the burden of proof by offering evidence . . . that the delay is due to the willful neglect of the prosecution, the State should offer evidence *fully explaining* the reasons for the delay and sufficient to rebut the prima facie showing or risk dismissal." *Id.* at 143, 240 S.E.2d at 390 (emphasis added). The *McKoy* defendant made the prima facie showing that the State's willful neglect caused ten months of a twenty-two month delay. *Id.* But the State offered "no evidence designed to explain or justify" that particular ten-month period. *Id.* The State's incomplete explanation for the full duration of the delay led our Supreme Court to conclude the "reasons for delay" factor favored the defendant. *Id.*

Thus, *McKoy* establishes that once a defendant makes a prima facie showing that prosecutorial neglect or willfulness caused the delay, the State must "fully explain" the reasons for the delay to rebut the showing. 294 N.C. at 143, 240 S.E.2d at 390. *McKoy* does not also require, as Defendant mistakenly claims, the trial court to "fully explain" the delay in its Order.

In any case, as the party responsible for "fully explaining" the delay, the State offered evidence demonstrating the fifteen-month delay was primarily, if not exclusively, caused by Defendant. In January 2019, Defendant was found competent to stand trial and ADA Spencer contacted Mr. Freedman to schedule the trial. Mr. Freedman asked ADA Spencer to resend the plea offer so he could discuss it with Defendant. On 5 March 2019, the parties agreed to an August 2019 trial date. Subsequently, Mr. Freedman twice requested postponement, and the trial was moved

from August to November 2019, then from November 2019 to June 2020. Courts then closed in March 2020 due to the pandemic.

This case is analogous to *State v. Strickland*, 153 N.C. App. 581, 570 S.E.2d 898 (2022). In *Strickland*, this Court concluded a delay of 940 days satisfied the defendant's prima facie showing that prosecutorial negligence caused the delay. *Id.* at 586, 570 S.E.2d at 903 (citations omitted). However, the State rebutted the defendant's showing by offering evidence "showing that the long period of defendant's pretrial incarceration was the result of a prosecutorial backlog of other serious felony cases." *Id.* at 587, 570 S.E.2d at 903 (citation omitted). Because, in turn, the defendant was unable to produce any evidence of neglectful or willful conduct by the prosecution, the "second *Barker* factor weigh[ed] in favor of the State." *Id.*

Here, as in *Strickland*, the State's evidence explaining the reasons for the fifteen-month delay rebuts Defendant's prima facie showing. In response, Defendant has not identified any willful or negligent conduct by the State that contributed to this period of the delay. Indeed, the Record shows the opposite: the State repeatedly sought to schedule a trial. It was defense counsel who asked for time to review a plea offer with Defendant and later requested and received two postponements of scheduled trial dates. Such delays—attributable to Defendant or his defense counsel—count heavily against the claim of a speedy trial violation. *See Farook*, 381 N.C. at 180-81, 871 S.E.2d at 747-48.

C. *Assertion of Right*

Next, we consider "[w]hether and how" Defendant asserted his right to a speedy trial. *Barker*, 407 U.S. at 531, 92 S. Ct. at 2192. "A criminal defendant who vigorously asserts his right to a speedy trial will be considered in a more favorable light than a defendant who does not." *Strickland*, 153 N.C. App. at 587, 570 S.E.2d at 903 (citation omitted). A defendant's assertion of the right "is entitled to strong evidentiary weight" in determining whether a speedy trial violation occurred. *Barker*, 407 U.S. at 531-32, 92 S. Ct. at 2193. However, an "assertion of the right, by itself, d[oes] not entitle [a defendant] to relief." *Spivey*, 357 N.C. at 121, 579 S.E.2d at 256 (citing *Barker*, 407 U.S. at 533, 92 S. Ct. at 2193).

Here, Defendant claims he asserted his right to a speedy trial twice. First, Attorney Jason Crump filed a Demand for a speedy trial in February 2017, less than a year after Defendant's arrest and more than five years before his first trial.

The trial court made two Findings concerning the February 2017 Demand:

> 15. That [Mr. Freedman] had filed a second speedy trial motion on behalf of the Defendant [in May 2021] inasmuch as everyone considered the previous speedy trial motion abandoned since the Defendant requested Mr. Crump withdraw, in which Mr. Crump did.
>
> . . . .
>
> 21. That in that period of time [prior to trial], the Defendant has filed only one speedy trial motion that wasn't determined to be abandoned.

Defendant challenges these Findings on the ground he never abandoned the February 2017 Demand. We agree with Defendant that no competent evidence

supports the Findings that "everyone considered" this first Demand abandoned or that it was "determined to be abandoned" at any time prior to the first trial. In its written motion submitted to the trial court, the State "contend[ed] the Defendant abandoned this motion when he requested Mr. Crump withdraw as his attorney," without citing any supporting evidence or legal authority.[7] Notably, at the 11 July 2022 hearing, the State referenced the February 2017 Demand but did not orally argue it was abandoned. However, Mr. Anthony stated that "the first speedy trial motion was filed by Mr. Crump in February of 2017 while the matter was still in district court." This suggests defense counsel, and thus Defendant, never considered—much less conceded—the first Demand had been abandoned. Therefore, because we conclude challenged Findings of Fact 15 and 21 are not supported by competent evidence, we set them aside. *Cf. State v. McRae*, 276 N.C. 308, 314, 172 S.E.2d 37, 41 (1970) ("When the trial judge's findings are based on competent evidence in the record, they are conclusive, and the reviewing court cannot properly set aside or modify such findings." (citations omitted)). Instead, we consider the February 2017 Demand a valid assertion of the right to a speedy trial.

---

[7] On appeal, the State repeats the bare assertion that Mr. Crump's withdrawal from the case constituted abandonment of the first Demand—and again fails to cite any record evidence or legal authority for the purported lockstep connection between an attorney's withdrawal and a defendant's abandonment of a previously-filed motion or demand for a speedy trial.

Mr. Freedman filed Defendant's second speedy trial Demand in May 2021, about five years after Defendant's arrest. Therefore, Defendant twice asserted his right to a speedy trial, and this factor generally weighs in his favor.

D. *Prejudice to Defendant*

Finally, we examine the prejudice factor.

> To assess whether the defendant has suffered prejudice from the delay in bringing his case to trial, we analyze three interests identified by the *Barker* Court that are affected by an unreasonable delay: (1) oppressive pretrial incarceration, (2) the social, financial, and emotional strain and anxiety to the accused of living under a cloud of suspicion; and (3) impairment of the ability to mount a defense to the charges pending against the defendant.

*Farook*, 381 N.C. at 189, 871 S.E.2d at 753 (citations omitted). Of the three interests "the speedy trial right was designed to protect," the third is the "most serious . . . because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Barker*, 407 U.S. at 532, 92 S. Ct. at 2193.

"[A] criminal defendant may establish prejudice for purposes of his speedy trial claim through proof of either actual prejudice or presumptive prejudice."[8] *Farook*, 381 N.C. at 190, 871 S.E.2d at 754 (citing *Doggett*, 505 U.S. at 655, 112 S. Ct. at 2693).

---

[8] In its Order, the trial court concluded "Defendant has demonstrated no prejudice, actual or substantial, than [sic] in any way he has been prejudiced by the delay." The requirement that Defendant demonstrate "actual or substantial prejudice" is a prior standard of our Supreme Court. *See, e.g.*, *State v. Farmer*, 376 N.C. 407, 412, 852 S.E.2d 334, 339 (2020). However, in the more recent case of *State v. Farook*, our Supreme Court held a defendant can show actual prejudice or "presumptive prejudice." 381 N.C. at 190, 871 S.E.2d at 754. We therefore analyze Defendant's argument under the *Farook* standard.

The concept of presumptive prejudice recognizes "that when the delay is inordinate and undue it may be impossible for the defendant to produce evidence of demonstrable [i.e., actual] prejudice 'since excessive delay can compromise a trial's reliability in unidentifiable ways.' " *Id.* (quoting *Doggett*, 505 U.S. at 648, 112 S. Ct. at 2688). Thus, the "failure to show actual prejudice to the defense is not fatal per se to a speedy trial claim." *Id.* Therefore, a "lengthy delay coupled with the absence of any rebuttal [by the State] to the presumption of prejudice should result in a finding of prejudice." *Id.* (citing *Doggett*, 505 U.S. at 658, 112 S. Ct. at 2694).

Defendant argues he suffered actual prejudice in multiple ways. Regarding the first interest, oppressive pretrial incarceration, Defendant contends the trial court gave "no weight" to the prejudicial effects of the six years he spent in custody. At the 11 July 2022 Motion hearing, Mr. Anthony argued "having to remain in pretrial detention" had "prejudiced [Defendant]," adding that Defendant's bond "is clearly well beyond his means." However, nothing in the Record demonstrates Defendant's bond was excessive given the seriousness of the alleged crimes and other factors used to determine bond, such that Defendant's continuous pretrial incarceration was particularly unreasonable. For its part, the State argued that three trial judges had heard Defendant's bond motions, and none had reduced his bond, raising the inference that these judges, each aware of how long Defendant had been in prison, uniformly "believed this period of incarceration of Defendant was not prejudicial to his case." The trial court agreed, finding none of the trial judges who heard

Defendant's bond motions "have lowered his bond nor criticized the length of time for which he had been in custody." Thus, Defendant did not demonstrate actual prejudice via oppressive pretrial incarceration.

With regard to the second interest of social, financial, and emotional strain and anxiety, Defendant argues he was prejudiced because "the mental, physical, and emotional toll of a six-year pretrial detention cannot be presumed to be zero." Although we "acknowledge the oppressive and anxiety-inducing nature of pretrial incarceration" as a general matter, Defendant has not argued a particularized distress that prejudiced him "above the prejudice inherent in every pretrial incarceration." *State v. Ambriz*, 286 N.C. App. 273, 304-05, 880 S.E.2d 449, 473-74 (2022). *See also State v. Lyszaj,* 314 N.C. 256, 262, 333 S.E.2d 288, 293 (1985) ("bald contentions" of prejudice do not support a speedy trial claim). The "standard presence" of anxiety and distress that attends all pretrial incarceration is insufficient to show prejudice. *State v. Farmer*, 376 N.C. 407, 418, 852 S.E.2d 334, 343 (2020). Therefore, Defendant has not demonstrated actual prejudice to the second interest the speedy trial right is designed to protect.

As to the third and most important interest, Defendant does not show the delay prejudiced him by impairing his ability to mount a defense. At the 11 July 2022 Motion hearing, Mr. Anthony expressed a general concern that "six years is a long time for witnesses to wait and recall," and the State's witnesses "may . . . have no recollection or memory of what occurred, or very little." Mr. Anthony conceded the

passage of time "would be a substantial impairment of the State's case to have to bring people in and remind them of what they said before." In so doing, Mr. Anthony acknowledged the delay may have prejudiced *the State's* ability to prove its case. Of course, the *Barker* prejudice factor concerns only the impairment of a *defendant's* ability to prepare his case for trial. *See Barker*, 407 U.S. at 533, 92 S. Ct. at 2193 ("[I]f a defendant is locked up, he is hindered in his ability to gather evidence, contact witnesses, or otherwise prepare his defense." (footnote omitted)).

Furthermore, as the trial court found, Defendant gave "no forecast of any witnesses whose memories have dulled because of the length of time." *See id.* at 532, 92 S. Ct. at 2193 ("There is also prejudice if defense witnesses are unable to recall accurately events of the distant past."). Finally, as the State established, a prosecution eyewitness died in 2020, two years before the first trial. The trial court reasonably found that the unavailability of this witness "would tend to be more prejudicial to the State than to the Defendant."[9] *Cf. id.* at 534, 92 S. Ct. at 2194 (concluding defendant experienced "minimal" prejudice because, *inter alia*, "there is

---

[9] On appeal, Defendant argues the death of this witness, Eddie Bonaparte, during the pendency of his case prejudiced his defense because he could not cross-examine Bonaparte about certain statements, admitted under the excited utterances hearsay exception, which the State showed the jury via police body camera footage. However, at the trial court below, Defendant did not make any arguments about the prejudicial effects of his inability to cross-examine Bonaparte. "[W]here a theory argued on appeal was not raised before the trial court, the law does not permit parties to swap horses between courts in order to get a better mount." *State v. Sharpe*, 344 N.C. 190, 194, 473 S.E.2d 3, 5 (1996) (citations and quotation marks omitted). Thus, we do not consider Defendant's unpreserved argument that the inability to cross-examine Bonaparte prejudiced his defense.

no claim that any of [defendant's] witnesses died or otherwise become unavailable owing to the delay.").

After considering the three component interests at issue in this factor, we conclude Defendant has not demonstrated actual prejudice. Nor has he shown presumptive prejudice. As our Supreme Court explained in *State v. Farook*, "a lengthy delay *coupled with the absence of any rebuttal to the presumption of prejudice* created by that delay should result in a finding of prejudice." 381 N.C. at 189, 871 S.E.2d at 753 (citation omitted) (emphasis added). However, in the case *sub judice*, the State has offered sufficient evidence to explain the six-year delay and rebut the presumption of prejudice it created. Therefore, under *Farook*, the State's explanation of the delay rebuts any claim of presumptive prejudice. Consequently, as Defendant has not demonstrated actual or presumptive prejudice, this factor favors the State.

E. *Weighing the Factors*

"No one [*Barker*] factor is determinative of a speedy-trial violation; they must all be weighed and considered together." *Spinks*, 277 N.C. App. at 567, 860 S.E.2d at 318 (citation and quotation marks omitted). Here, Defendant awaited trial for over six years and twice asserted his right to a speedy trial. Thus, the "length of delay" and "assertion of right" *Barker* factors favor Defendant.

However, the two remaining factors weigh heavily against Defendant and in favor of the State. Defendant has not met his burden of showing the delay prejudiced his case. And the State has rebutted the presumption of prejudice created by the six-

year delay by demonstrating the significant majority of the delay was attributable either to Defendant or to neither party. We are particularly persuaded by evidence showing Defendant's actions (i.e., requesting his lawyers withdraw) and actions of defense counsel (i.e., seeking competency evaluations and rescheduling trial dates) caused a sizable portion of the delay. On this point, we heed our Supreme Court's instruction that "delays occasioned by acts of the defendant or on his or her behalf are heavily counted against the defendant and will *generally defeat* his or her speedy trial claim." *Farook*, 381 N.C. at 180-81, 871 S.E.2d at 747-48 (citations omitted) (emphasis added). Consequently, after reviewing the Record and balancing the *Barker* factors, we conclude Defendant has not demonstrated the trial court's Order denying his Motion to Dismiss for violation of his right to a speedy trial was error.

II.     Remand for New Hearing

As an alternative remedy to vacating his conviction for a speedy trial violation, Defendant requests this Court remand for a new hearing on the speedy trial Motion because "the trial court failed to properly consider and apply all the *Barker* factors."

In support of this argument, Defendant cites *State v. Wilkerson*, 257 N.C. App. 927, 810 S.E.2d 389 (2018). In *Wilkerson*, this Court reviewed an order denying a speedy trial motion, which the trial court had issued after an earlier remand of a prior order that "summarily" denied a speedy trial motion without "considering all of the *Barker* factors" or "making appropriate findings." *Id.* at 928, 810 S.E.2d at 391

(citation and quotation marks omitted). Upon remand, the trial court "did not allow for any further argument or any additional evidence to be presented" and "stated it had considered the *Barker* factors when it made its first ruling." *Id.* The second order was also held deficient:

> The superior court concluded it had "weighed" and "balanced" the factors, but provided no findings to support this assertion. The written order produced upon this Court's earlier remand was changed little from the order on the previously summarily denied motion. The superior court's findings of fact were not supported by the evidence.

*Id.* at 937, 810 S.E.2d at 396. This Court therefore vacated the trial court's order denying the speedy trial motion and again remanded the matter, instructing the trial court to conduct "a full evidentiary hearing and to make proper findings and analysis of the relevant [*Barker*] factors." *Id.* at 927, 810 S.E.2d at 391.

In the case *sub judice*, Defendant argues the trial court, like the one in *Wilkerson*, failed to adequately weigh and consider the *Barker* factors. But while Defendant appeals the same substantive result as the defendant in *Wilkerson*, this Order is not similarly flawed. First, the Order contains sufficient Findings of Fact supported by competent evidence, which was not the case in *Wilkerson*. Second, the Findings support the Conclusions of Law, which demonstrate the trial court's consideration of the *Barker* factors. Presuming arguendo that some aspect of the trial court's discussion of the *Barker* factors was inadequate, "a correct decision of a lower court will not be disturbed on review simply because an insufficient or superfluous

reason is assigned. The question for review is whether the ruling of the trial court was correct and not whether the reason given therefor is sound or tenable." *State v. Blackwell*, 246 N.C. 642, 644, 99 S.E.2d 867, 869 (1957) (citations omitted).

Thus, the Order reflects the trial court's reasonable analysis of the facts and application of the *Barker* factors. Therefore, the trial court did not err by determining Defendant's right to a speedy trial was not violated. Consequently, we decline Defendant's request to remand this matter for a de novo hearing.

III.   Ineffective Assistance of Counsel

Defendant next contends his trial counsel was constitutionally deficient based on counsel's failure to impeach the credibility of a State's witness with evidence of the witness's prior convictions for crimes of dishonesty. Alternatively, Defendant asks this Court to dismiss his IAC claim without prejudice so that he may pursue the claim via a motion for appropriate relief in the trial court.

In general, IAC claims should be considered through motions for appropriate relief and not on direct appeal. *See State v. Dockery*, 78 N.C. App. 190, 192, 336 S.E.2d 719, 721 (1985) ("The accepted practice is to raise claims of ineffective assistance of counsel in post-conviction proceedings, rather than direct appeal."); *State v. Ware*, 125 N.C. App. 695, 697, 482 S.E.2d 14, 16 (1997) (dismissing the defendant's appeal because issues could not be determined from the record on appeal and stating that to "properly advance these arguments, defendant must move for appropriate relief pursuant to G.S. 15A-1415[.]"). A motion for appropriate relief is preferable to direct

appeal because in order to

> defend against ineffective assistance of counsel allegations, the State must rely on information provided by defendant to trial counsel, as well as defendant's thoughts, concerns, and demeanor. [O]nly when all aspects of the relationship are explored can it be determined whether counsel was reasonably likely to render effective assistance.

*State v. Buckner*, 351 N.C. 401, 412, 527 S.E.2d 307, 314 (2000) (citations and quotation marks omitted). "IAC claims brought on direct review will be decided on the merits when the cold record reveals that no further investigation is required, i.e., claims that may be developed and argued without such ancillary procedures as the appointment of investigators or an evidentiary hearing." *State v. Fair*, 354 N.C. 131, 166, 557 S.E.2d 500, 524 (2001) (citations omitted). However, "should the reviewing court determine that IAC claims have been prematurely asserted on direct appeal, it shall dismiss those claims without prejudice to the defendant's right to reassert them during a subsequent MAR proceeding." *Id.* at 167, 557 S.E.2d at 525 (citation omitted).

In order to prevail on an IAC claim, Defendant "must show that counsel's representation fell below an objective standard of reasonableness" and "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694, 104 S. Ct. 2052, 2064, 2068, 80 L. Ed. 2d 674, 693, 698 (1984); *see also State v.*

*Braswell*, 312 N.C. 553, 562-63, 324 S.E.2d 241, 248 (1985) (adopting *Strickland* standard for IAC claims under N.C. Const. art. I, §§ 19, 23).

Here, we are unable to decide Defendant's IAC claim based on the "cold record" on appeal. *Fair*, 354 N.C. at 166, 557 S.E.2d at 524 (citations omitted). We thus conclude "further development of the facts would be required before application of the *Strickland* test[.]" *State v. Allen*, 360 N.C. 297, 316, 626 S.E.2d 271, 286 (2006) (citation omitted). Therefore, we dismiss Defendant's IAC claim without prejudice to permit Defendant to pursue a motion for appropriate relief in the trial court.

## **Conclusion**

Accordingly, for the foregoing reasons, there was no error at trial and we affirm the Judgments of the trial court. Further, Defendant's IAC claim is dismissed without prejudice.

NO ERROR IN PART; DISMISSED WITHOUT PREJUDICE IN PART.

Judges WOOD and GRIFFIN concur.

Report per Rule 30(e).